William HAYES, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 53A01–0208–CR–332.

Court of Appeals of Indiana.

Aug. 28, 2003.

Robert T. Miller, R.T. Miller & Associates, Bloomington, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Andrew A. Kobe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

1. We heard oral argument on June 3, 2003.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

William Hayes appeals his conviction for Dealing in Cocaine, as a Class A felony, following a jury trial and his adjudication as an Habitual Offender after a guilty plea. He presents the following two issues for our review:

1. Whether he was seized in violation of the Fourth Amendment to the United States Constitution when police conducted a "knock and talk" investigation to gain access to his motel room.

2. Whether his consent to search his motel room was voluntary under the Fourth Amendment.

We affirm.[1]

### FACTS AND PROCEDURAL HISTORY

Hayes was the target of a crack cocaine investigation. In January 2001, an informant told Detective Robert Shrake of the Bloomington Police Department and South Central Indiana Narcotics Task Force that Hayes was dealing drugs out of Room 113 at the Economy Inn in Bloomington. Detective Shrake, accompanied by three other officers, went to the motel room and knocked on the door. All four officers were dressed in civilian clothing, but they were also wearing side-arms and had handcuffs and badges. Hayes answered the door. Detective Shrake showed Hayes his police badge and identification as he introduced himself and his partner, Detective Wendy Kelly. Detective Shrake then stated, "I received a complaint of some drug activity down here. Can we come in

and talk to you about it[?]" Hayes replied "Yes" and let the officers inside.[2]

When Detective Shrake entered the motel room, he observed a second man, later identified as Larry Tanksley, take something from the top of a dresser and walk into a bathroom. Detective Shrake also observed a bag of marijuana sitting on top of the dresser. Detective Shrake immediately asked Tanksley to return to the main room, and he complied. Detective Shrake then asked Hayes, Tanksley, and Luwanda Johnson, who was also in the room, whether they had any weapons. They responded no. Detective Shrake asked Hayes whether he could look around the room for weapons, and Hayes said, "No problem." Detective Shrake "jokingly" asked if there were any drugs in the room, and Hayes and the others said no. Detective Shrake said, "Well, would you want me to get [any drugs in the room] out of here?" to which Hayes replied "Yes." Detective Shrake then told Hayes that he did not have to give him permission to look for weapons and drugs, but Hayes told him that he and the other officers could "look around."

Detective Shrake proceeded to the bathroom and knocked over a trash can to see if there were any weapons inside of it. While he did not find any weapons in the trash can, he saw a crack pipe sitting on the window sill. Then, when he walked out of the bathroom, he saw a bag containing a white rocky substance on top of a microwave. Detective Shrake discussed his observations with Detective Kelly, and he then began to talk to Hayes and Tanksley. Detective Kelly showed Detective Shrake a baggie containing what appeared to be several rocks of crack cocaine that she had found in the trash on the bathroom floor. Detective Shrake told Hayes and Tanksley about the drugs they had found in the room, and he arrested Hayes, Tanksley, and Johnson. During a search incident to arrest, police found over three grams of crack cocaine and $1,800 in Hayes' pants' pocket. Later, at the police station, Detective Shrake conducted a videotaped interview with Hayes.

The State charged Hayes with dealing in cocaine, as a Class A felony. Prior to trial, Hayes filed a motion to suppress the drugs obtained during the search of his motel room and his person. Hayes argued that the evidence was obtained pursuant to an unreasonable search and seizure under the Indiana and United States Constitutions.[3] At the suppression hearing, Detective Shrake testified that he did not have enough information "to even speak with a judge to get a search warrant" before he went to Hayes' motel room. Transcript at 27. But Detective Shrake also testified that Hayes voluntarily consented to the officers' entry into the motel room and the subsequent search. Following the hearing, the trial court denied Hayes' motion to suppress and made detailed findings and conclusions.[4]

---

2. Hayes did not see the two other officers accompanying Detectives Shrake and Kelly until all four officers had entered the motel room.

3. On appeal, Hayes does not make any argument under the Indiana Constitution.

4. The trial court concluded in relevant part as follows:

> After reviewing the totality of the circumstances, the court finds that the defendant voluntarily consented to a search of his motel room. Detective Shrake and Detective Pritchard–Kelly identified themselves as police officers and the defendant voluntarily let them enter his motel room and voluntarily consented to a search. The consent to search was given without any fraud, duress, fear or intimidation. After the defendant invited the officers inside the motel room, the atmosphere was casual. Once the officers observed the baggy of marijuana on the floor, Detective Shrake asked if

At trial, over Hayes' objections, the trial court admitted into evidence the drugs and money obtained during the search of Hayes' motel room and his person. A jury found Hayes guilty as charged, and Hayes pleaded guilty to being an habitual offender. The trial court entered judgments of conviction accordingly and sentenced Hayes to eighty years executed. This appeal ensued.

## DISCUSSION AND DECISION

### Standard of Review

The trial court has broad discretion in ruling on the admissibility of evidence. *Small v. State*, 632 N.E.2d 779, 782 (Ind. Ct.App.1994), *trans. denied.* We will disturb its ruling only upon a showing of abuse of that discretion. *Id.* An abuse of discretion may occur if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. *Baxter v. State*, 734 N.E.2d 642, 645 (Ind.Ct.App.2000).

### Issue One: Knock and Talk

Hayes first contends that the officers' "knock and talk" investigation led to a seizure that violated the Fourth Amendment to the United States Constitution. This is an issue of first impression for an Indiana appellate court.[5] As such, we look to other jurisdictions for guidance.

■ The Fourth Amendment provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

"It is axiomatic that the 'physical entry of the home [6] is the chief evil against which the wording of the Fourth Amendment is directed.'" *State v. Straub*, 749 N.E.2d 593, 597 (Ind.Ct.App.2001) (quoting *United States v. United States District Court*, 407 U.S. 297, 313, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972)). A principal protection against unnecessary intrusions into private dwellings is the warrant requirement imposed by the Fourth Amendment on agents of the government who seek to enter a residence for purposes of search or arrest. *Id.* Thus, searches and seizures inside a home without a warrant are presumptively unreasonable. *Id.* But there are a " 'few . . . and carefully delineated' " exceptions to the warrant requirement. *Id.* (quoting *United States District Court*, 407 U.S. at 318, 92 S.Ct. 2125).

there was crack cocaine in the room. At this time the defendant stated that there was not and that Detective Shrake could look around the room if he wanted to. The officers did not threaten defendant in any way. Furthermore, the defendant had prior dealings with the police and therefore was not unsophisticated as to the ways of the police.

5. While Indiana courts have addressed similar fact patterns in the Fourth Amendment context, this is the first time an Indiana court has been presented with a specific challenge to the "knock and talk" investigation used by police. *See Ackerman v. State*, 774 N.E.2d 970 (Ind.Ct.App.2002) (addressing legality of officer gaining entry to defendant's home without warrant after knocking on front door); *Jones v. State*, 409 N.E.2d 1254 (Ind. Ct.App.1980) (addressing legality of officers gaining entry to motel room without warrant after knocking twice).

6. A person's hotel room is a "home" for Fourth Amendment purposes. *Ceroni v. State*, 559 N.E.2d 372, 373 (Ind.Ct.App.1990).

A knock and talk investigation "involves officers knocking on the door of a house, identifying themselves as officers, asking to talk to the occupant about a criminal complaint, and eventually requesting permission to search the house." *State v. Reinier,* 628 N.W.2d 460, 466 (Iowa 2001). "If successful, it allows police officers who lack probable cause to gain access to a house and conduct a search." *Id.* Both federal and state appellate courts which have considered the question, including the United States Court of Appeals for the Seventh Circuit, have concluded that the knock and talk procedure does not per se violate the Fourth Amendment. *See Scott v. State,* 347 Ark. 767, 67 S.W.3d 567, 575 (2002); *see also United States v. Johnson,* 170 F.3d 708, 720 (7th Cir.1999); *United States. v. Jones,* 239 F.3d 716, 720 (5th Cir.2001); *Scott v. State,* 366 Md. 121, 782 A.2d 862, 872–73 (2001); *People v. Frohriep,* 247 Mich.App. 692, 637 N.W.2d 562, 566 (2001).

"Though the 'knock and talk' procedure is not automatically violative of the Fourth Amendment, it can become so." *Keenom v. State,* 349 Ark. 381, 80 S.W.3d 743, 747 (2002). The constitutional analysis begins with the knock on the door. *Scott v. State,* 366 Md. 121, 782 A.2d 862, 867 (2001). The prevailing rule is that, absent a clear expression by the owner to the contrary, police officers, in the course of their official business, are permitted to approach one's dwelling and seek permission to question an occupant. *Id.* at 867–68.

"Not every confrontation between 'policemen and citizens' amounts to a Fourth Amendment 'seizure' of persons." *State v. Carlson,* 762 N.E.2d 121, 125 (Ind. Ct.App.2002) (quoting *Terry v. Ohio,* 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). " 'Only when the officer, by means of physical force or show of authori-

ty, has in some way restrained the liberty of a citizen may we conclude a "seizure" has occurred.' " *Id.* A seizure does not occur simply because a police officer approaches a person, asks questions, or requests identification. *Id.*

Courts examining the Fourth Amendment implications of the knock and talk procedure have held that a seizure occurs when, "taking into account all of the circumstances surrounding the encounter, the police conduct would 'have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.' " *See, e.g., Kaupp v. Texas,* —— U.S. ——, ——, 123 S.Ct. 1843, 1845, 155 L.Ed.2d 814 (2003) (quoting *Florida v. Bostick,* 501 U.S. 429, 437, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991)) (holding seizure illegal where three officers got minor defendant out of bed in middle of night, handcuffed him, and drove him in patrol car to station); *State v. Reinier,* 628 N.W.2d 460, 469 (Iowa 2001) (holding seizure illegal where officers entered defendant's enclosed porch without first asking to enter and deceived defendant regarding their purpose for wanting to conduct search); *Keenom,* 80 S.W.3d at 747 (holding seizure illegal where officers continued questioning defendant outside his mobile home despite his request that they leave and return later); *cf. Frohriep,* 637 N.W.2d at 568 (holding no illegal seizure where police approached defendant in his yard and asked permission to look around for drugs; evidence showed defendant not threatened or coerced). Thus, we must determine whether, under the facts presented here, a reasonable person would have felt free to refuse entry to Detective Shrake and the other officers.

The Washington Supreme Court has expressed its "belief that any knock and talk is inherently coercive to some degree." *State v. Ferrier,* 136 Wash.2d 103, 960 P.2d

927, 933 (1998) (applying state constitutional analysis). The court stated:

> While not every knock and talk effort may be accompanied by ... [a] great ... show of force ..., we believe that the great majority of home dwellers confronted by police officers on their doorstep or in their home would not question the absence of search warrant because they either (1) would not know that a warrant is required; (2) would feel inhibited from requesting its production, even if they knew of the warrant requirement; or (3) would simply be too stunned by the circumstances to make a reasoned decision about whether or not to consent to a warrantless search.... Indeed, we are not surprised that, as noted earlier, an officer testified that *virtually everyone confronted by a knock and talk accedes to the request to permit a search of their [sic] home.* We wish to emphasize that we are not entirely disapproving of the knock and talk procedure, and we understand that its coercive effects are not altogether avoidable. They can, however, be mitigated by requiring officers who conduct the procedure to warn home dwellers of their right to refuse consent to a warrantless search. This would ... accord with the state's Fourth Amendment burden of demonstrating, by clear and convincing evidence, that consent to a search was voluntarily given.

*Id.* (emphasis added).

We agree that residents of a home are not likely to deny a police officer's request to enter, either because they are ignorant of the law or are simply "too stunned by the circumstances to make a reasoned decision about whether or not to consent to a warrantless search...." *See id.; see also Overstreet v. State,* 724 N.E.2d 661, 665 (Ind.Ct.App.2000) (Robb, J. dissenting) (stating "I do not think that any reasonable person, when approached by a police officer and questioned about his activities, would honestly feel free to refuse to answer or to leave."). Knock and talk might more aptly be named "knock and enter," because it is usually the officer's goal not merely to talk but to conduct a warrantless search of the premises. While not per se unlawful, the knock and talk procedure "pushes the envelope" and can easily be misused. The right of the people under the Fourth Amendment to be secure in their houses against unreasonable searches and seizures would be well served if there were well-defined procedures in place governing this type of investigation.

■ With regard to consents to search, the United States Supreme Court has held that "knowledge of the right to refuse consent is one factor to be taken into account, [but] the government need not establish such knowledge as the sine qua non of an effective consent." *Schneckloth v. Bustamonte,* 412 U.S. 218, 227, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Thus, while the Fifth Amendment requires an advisement of rights under *Miranda,* there is no equivalent requirement under the Fourth Amendment. But we think the better practice in conducting a knock and talk investigation would be for the officer to identify himself and advise the occupant of his right to deny entry. While an occupant might still be unable to make a reasoned decision, *see Ferrier,* 960 P.2d at 933,[7] such an advisement would minimize

---

7. In this case, during the suppression hearing, the trial court engaged in the following colloquy with Detective Shrake:

THE COURT: Do you think [Hayes] knew there were drugs in the room?

Detective Shrake: Yes.

THE COURT: Why would he open the door wider?

Detective Shrake: ... I believe that the crack that Mr. Tanksley took from the

needless suppression motions, hearings, and appeals.

■ The best practice would be for the officer to obtain written consent prior to entering a residence. Consent to search forms are used throughout our state. *See, e.g., Overstreet v. State,* 783 N.E.2d 1140 (Ind.2003) (Johnson County); *Ware v. State,* 782 N.E.2d 478 (Ind.Ct.App. 2003) (Howard County); *Livermore v. State,* 777 N.E.2d 1154 (Ind.Ct.App.2002) (Gibson County). Regardless, we are persuaded by the case law of the majority of other jurisdictions holding that the knock and talk investigation does not per se violate the Fourth Amendment.

■ On appeal, Hayes maintains that he merely acquiesced in the officers' request to enter the motel room. There is a fine line between acquiescence to a show of authority and actual consent. And there can be little doubt that the unexpected presence of armed police officers at Hayes' motel room door was intimidating. But, again, whether an illegal seizure occurred as a result of the knock on the door depends upon the totality of the circumstances. *See Kaupp,* —— U.S. at ——, 123 S.Ct. at 1845. There is no evidence that the officers pounded on the door or had drawn their weapons when Hayes answered the door. There is no evidence that any of the officers raised their voices or commanded Hayes to let them into the motel room. Instead, the evidence shows that Detective Shrake merely asked Hayes for permission to enter the room to discuss

complaints of drug activity, and Hayes opened the door and verbally assented before allowing Detective Shrake and the other officers inside. Considering the totality of these circumstances and our standard of review, we hold that no illegal seizure occurred as a result of the knock and talk investigation in this case.

## Issue Two: Consent to Search

■ Hayes next contends that his consent to search the motel room was involuntary under the Fourth Amendment. A valid consent to search is an exception to the warrant requirement. *Pinkney v. State,* 742 N.E.2d 956, 959 (Ind.Ct.App. 2001). When consent to search is obtained as a result of a knock and talk investigation, the validity of the encounter ultimately hinges on the voluntariness of the consent given. *Reinier,* 628 N.W.2d at 466. The consent exception to the warrant requirement allows a search and seizure when consent is unequivocal, specific, and freely and intelligently given. *People v. Frohriep,* 247 Mich.App. 692, 637 N.W.2d 562, 568 (2001). The validity of the consent depends on the totality of the circumstances. *Id.* Courts dealing with the consent to search issue, as it arises in a knock and talk setting, have considered the number of officers present, the age, maturity, intelligence, and experience of the consenting party, the officers' conduct and other circumstances under which the consent was given, and the duration, location, and

---

dresser and hid [sic] Hayes probably thought that Tanksley had that on him and a small amount of marijuana could have been, maybe he didn't know it was there or thought it was hidden somewhere else. I don't believe that he thought we would find anything. I also believe that it's not uncommon for me to have been in ... the same situation with someone else and there be crack there and me not find it or it go

undetected, because of the circumstances. I think that ... people don't think we'll find it.... [W]e didn't find it in his pocket until ultimately he was arrested. Had we not found the other contraband and things in the room, he wouldn't have been arrested. We would have never found it. We would have left.
Transcript at 39.

time of the encounter. *Id.* at 875, 637 N.W.2d 562.

The facts in *Scott v. State*, 366 Md. 121, 782 A.2d 862 (2001), are similar to those here. The defendant and his girlfriend rented a motel room in Baltimore, and they brought with them marijuana and a shoe box containing crack cocaine, cocaine, a scale, a razor blade, hundreds of vials, and plastic baggies. Because the motel was known to be frequented by drug dealers and users, police officers routinely conducted knock and talk investigations there. At approximately 11:30 p.m., three or four police officers, dressed in civilian clothing with police badges displayed and wearing holstered handguns, knocked on the defendant's door. When the defendant opened the door, the officers explained that there was a history of drug activity at the motel and asked "if [they] could come in and talk to him." *Id.* at 865. The defendant invited the officers inside, and they immediately smelled burning marijuana and saw a marijuana cigar in an ashtray. The officers asked the defendant whether he or his girlfriend had any drugs or weapons in their possession, and he responded no. The officers then asked the defendant for permission to search the motel room, and he responded "go ahead." *Id.* As a result of the search, the officers found the defendant's shoe box containing the cocaine and items used to deal cocaine, and they placed the defendant and his girlfriend under arrest.

The defendant in *Scott* gave a different version of events. He said that one of the officers knocked on his door so loudly that, despite noise from a hot tub and television in the motel room, it "scare[d him] and made [him] jump up and go straight to the door." *Id.* The defendant testified as follows:

> As soon as I cracked the door, I[saw] four officers standing outside the door. One officer had his badge displayed and he asked me could he ask me some questions. I asked the officer about what? What for? So he was like we just want to ask you—come in and ask you some questions. I'm like no. So he [was] like well, all we are going to do is ask you some questions. I am like all right. I opened the door a little bit. I was behind the door. As soon as I opened the door up, I stepped back and the officer must have thought I gave him [the] okay to come in my room. Because as soon as I stepped back, the officer came straight in.

*Id.* at 866. The defendant stated that he never told the officers that they could come in and search the room. When asked why he opened the door, he said that he "didn't think [he] had a choice. As soon as [he] stepped back, they came straight in the room." *Id.* He testified further, "It [was] 11:30 at night and four officers are coming in [his] room. [He] didn't think [he] had a choice to tell [them to leave]." *Id.*

The trial court denied the defendant's motion to suppress the evidence obtained as a result of the search. On appeal, the Maryland Court of Appeals affirmed the trial court, holding:

> We are not persuaded by this record that the Circuit Court committed any error of law or any clear error of fact in determining that Scott (1) consented to the search of his room, and (2) the consent was voluntary. In hindsight, that was a foolish decision, from his point of view, but *the issue is not whether the consent was an intelligent one, only whether it was voluntary.* The evidence, in a light most favorable to the State, shows no police overbearing, or even impoliteness. The entire incident, from knock to completion of the search, took only two or three minutes. *Scott*

was not inexperienced; he had previously been convicted of a drug offense, which accounted for his increased sentence. His own testimony regarding his brief conversation with Detective Schwanke prior to admitting the officers to the room indicated an awareness on his part that he could have refused entry. Once he allowed them to enter, he exposed them immediately to one item of contraband and, according to Detective Schwanke, [his girlfriend] voluntarily produced another.

*Id.* at 875 (emphasis added).

Here, we do not know Hayes' version of events. He did not testify at trial, and the audio portion of his videotaped statement to police is inaudible.[8] According to the State's witnesses, the officers' encounter with Hayes and the others lasted approximately fifteen minutes from entry to their arrest. The encounter was described as "casual" and Detective Shrake testified that "it's [his] personality to come across fairly nice." Detective Shrake asked Hayes "at least two or three times to be sure that he didn't mind if we looked around." And he advised Hayes that he did not have to let them search the room. The officers found marijuana and crack cocaine in plain view. According to the pre-sentence investigation report, Hayes was just three months' shy of graduating from high school, where he was an honor student, and he had received his GED while incarcerated in Michigan. In addition, Hayes has three prior felony convictions, one of which was for dealing in a controlled substance.

An argument can be made that once the officers entered the motel room and Detective Shrake told Tanksley to return to the main room from the bathroom, a reasonable person would not have felt "at liberty to ignore the police presence and go about his business." *See Kaupp*, —— U.S. at ——, 123 S.Ct. at 1845. This is so especially in light of the number of officers and the small confines of Hayes' motel room. But under the totality of the circumstances, we cannot say that Hayes' consent to search was involuntary. Again, the constitutional question is "not whether the consent was an intelligent one, only whether it was voluntary." *See Scott*, 782 A.2d at 875. There was no violation of the Fourth Amendment here, and the trial court did not err when it admitted into evidence the fruits of the search.

Affirmed.

BAILEY, J., and ROBB, J., concur.

---

8. The State produced an audio-enhanced version of the tape, but it, too, is inaudible.