**STATE of Indiana, Appellant–Plaintiff,**

**v.**

**Jason I. FELKER, Appellee–Defendant.**

**No. 19A01–0403–CR–142.**

Court of Appeals of Indiana.

Dec. 29, 2004.

---

Steve Carter, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, IN, for Appellant.

Joseph L. Verkamp, Jasper, IN, for Appellee.

## OPINION

MAY, Judge.

The State appeals the grant of Jason Felker's motion to suppress. The State raises one issue on appeal, which we restate as whether the trial court correctly determined the information on which the State's request for a search warrant was based was obtained illegally and therefore could not be the basis for probable cause required for issuance of a search warrant. We affirm.[1]

### FACTS AND PROCEDURAL HISTORY

On September 3, 2003, Indiana State Trooper Mark Green and Celestine Town Marshal Robert Jenkins flew over Felker's residence and observed a marijuana plant growing in a cornfield across the road. The marijuana was growing seven rows in from the county road, and there was a distinct path from the plant to the county road. The path met the road directly across from Felker's driveway. Trooper Green and Marshal Jenkins went to the field and seized the plant.

Trooper Green and Marshal Jenkins then went to Felker's residence to investigate. Felker's child indicated Felker was at home, but his wife said he had just left the residence. Trooper Green had Marshal Jenkins stay at the front door of the residence while he went to the back. There, Trooper Green saw Felker walking nearby.

Trooper Green identified himself and explained he was investigating the marijuana plant found in the field. Trooper Green smelled a strong odor of an alcoholic beverage from Felker. He asked if Felker had ever been in trouble with the law and Felker stated he was on probation for operating a vehicle while intoxicated. Trooper Green advised Felker of his *Miranda* rights and asked for permission to search his residence. Felker responded he would like the Trooper to obtain a search warrant for his residence.

Trooper Green asked Felker to sit on a nearby swing. When Felker appeared nervous and put his hands in his pockets, Trooper Green asked him to place the contents of his pockets onto the hood of a vehicle. Felker pulled a "one-hitter"[2] from his pocket and admitted the one-hitter was used to smoke marijuana. While Trooper Green called the probation department to confirm Felker's probationary status, Felker grabbed the one-hitter and threw it into the woods. Trooper Green arrested Felker and retrieved the one-hitter.

Shortly before Felker was placed into the police car, he admitted he had additional paraphernalia inside his residence.

---

1. We heard oral argument in this case on November 22, 2004 in Indianapolis.

2. A "one-hitter" is a pipe used to smoke marijuana. *Burkett v. State,* 691 N.E.2d 1241, 1245 (Ind.Ct.App.1998), *reh'g denied, trans. denied* 698 N.E.2d 1194 (Ind.1998).

Trooper Green spoke with Felker's wife and advised her of her *Miranda* rights. She admitted there was a bong[3] inside the residence but stated she would prefer the officers obtain a search warrant before entering the residence.

Trooper Green applied for a search warrant for Felker's residence based on the proximity of the marijuana plant that led police to the residence and the admissions by Felker and his wife that there was additional paraphernalia and a bong in their residence. A judge issued the search warrant later that afternoon. The search of the residence revealed various controlled substances and paraphernalia.

On September 18, 2003, the State charged Felker with Count I, Class A misdemeanor cultivation of marijuana;[4] Count II, Class A misdemeanor possession of marijuana;[5] Count III, Class D felony unlawful possession or use of legend drug;[6] Count IV, Class D felony maintaining a common nuisance;[7] and Count V, Class A misdemeanor possession of paraphernalia.[8] The State filed notice of its intent to seek enhanced penalties on Counts I and II based on Felker's prior conviction.

On November 20, 2003, Felker moved to suppress all the evidence the State had seized. The State filed its response on December 23, 2003, and the court conducted a hearing on December 29, 2003. The court granted Felker's motion that day.

## DISCUSSION AND DECISION

 In appealing the grant of a motion to suppress, the State has the burden of demonstrating the constitutionality of its search. *State v. Friedel,* 714 N.E.2d 1231, 1235 (Ind.Ct.App.1999). We consider the evidence most favorable to the judgment of the trial court and we will neither reweigh the evidence nor judge the credibility of witnesses. *Id.* Therefore, we will reverse only when the evidence is without conflict and all reasonable inferences from the evidence lead to a conclusion opposite that reached by the trial court. *Id.*

 Because this case involves a search and seizure, Felker's rights under the Fourth Amendment to the Constitution of the United States are implicated:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrant shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

The purpose of the Fourth Amendment is to protect privacy and possessory interests from unreasonable searches and seizures. *Layman v. State,* 407 N.E.2d 259, 262 (Ind.Ct.App.1980).

 Facts obtained through an illegal procedure violating constitutional rights may not form the basis of probable cause

---

3. A bong is a "water pipe that consists of a bottle or a vertical tube partially filled with liquid and a smaller tube ending in a bowl, used often in smoking narcotic substances." *Posters 'N' Things, Ltd. v. United States,* 511 U.S. 513, 515 n. 1, 114 S.Ct. 1747, 128 L.Ed.2d 539 (1994) (quoting American Heritage Dictionary 215 (3d ed.1992)), *reh'g denied* 512 U.S. 1247, 114 S.Ct. 2771, 129 L.Ed.2d 884 (1994).

4. Ind.Code § 35–48–4–11(2).

5. Ind.Code § 35–48–4–11(1).

6. Ind.Code §§ 16–42–19–13 and 16–42–19–27(a).

7. Ind.Code § 35–48–4–13(b)(2)(B).

8. Ind.Code §§ 35–48–4–8.3(a)(1) and 35–48–4–8.3(b).

required for issuance of a warrant." *Watt v. State,* 412 N.E.2d 90, 94 (Ind.Ct.App. 1980). Felker argues his rights were violated by the officer's questioning, and any evidence obtained after that therefore could not serve as the basis for a search warrant.

The trial court apparently agreed. In the suppression hearing the trial court heard Trooper Green's testimony, then stated:

> We're on a road which the officer testified he didn't know if it was gravel or paved but, nevertheless, there was a marijuana plant spotted from an airplane up above. Then.. uh.. with that evidence the officer drives to this plant along this County Road and.. uh.. locates it and seven rows in a cornfield and I think I can picture about what seven rows would look like in September. There happens to be a house on the west side of the road and the cornfield is on the east and the police officers allege there is a path from that one stalk of marijuana, if that's what we can call it, that led to the road which would be right across the street, driveway from Mr. Felker's residence.... I don't know if the officer knew who lived in that house or not, but if someone didn't see him cultivate it, plant it.. uh.. for him to become the number one suspect, is stretching probable cause and reasonable doubt a little far for this reason.... I can't find probable cause today to arrest Mr. Felker for the simple reason it was a shotgun approach and.. uh.. too aggressive.

(Tr. at 16–17.) The court then held "the way the Trooper proceeded after finding that plant was wrong and then probably anything after that is wrong. So, I am going to grant the Defendant's Motion to Suppress." (*Id.* at 18.)

Despite the trial court's statement of the basis for its decision, the State argues probable cause supported the search warrant because Trooper Green found and seized Felker's one-hitter and Felker and his wife admitted there was paraphernalia and a bong in their residence. Felker does not argue this evidence was insufficient to support the issuance of a search warrant. Instead, he relies on the *Watt* rule that facts obtained through an illegal procedure violating constitutional rights may not form the basis of probable cause required for issuance of a warrant, 412 N.E.2d at 94, and argues the officer's questioning about whether Felker had ever been in trouble with the law and his requests, after Felker had declined to give the officer permission to search the residence, that Felker sit in a swing and empty his pockets amounted to an illegal search and seizure. This procedure, he argues, violated his constitutional rights and therefore could not form the basis of probable cause required for issuance of a warrant pursuant to *Watt.* We agree.

Trooper Green testified he located the marijuana plant from the air and started his investigation at Felker's residence because it was closest to the marijuana plant. It was permissible for Trooper Green to walk to the front door of Felker's house to ask questions. The Fourth Amendment does not prohibit Trooper Green from knocking on Felker's door to ask about the plant under the "knock and talk" procedure. *See Hayes v. State,* 794 N.E.2d 492, 497 (Ind.Ct.App.2003), *trans. denied* 804 N.E.2d 757 (Ind.2003).

Not every confrontation between a police officer and a citizen amounts to a Fourth Amendment seizure of the citizen. *Id.* at 496. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude a seizure has oc-

curred. *Id.* A seizure does not occur simply because a police officer approaches a person, asks questions, or requests identification. *Id.* Thus, absent a clear expression by the owner to the contrary, a police officer may, in the course of his or her official business, approach a dwelling and seek permission to question an occupant. *Id.*

The State characterizes the Trooper's interaction with Felker as the kind of consensual encounter between a police officer and a citizen that involves neither an arrest nor a stop, citing *Overstreet v. State,* 724 N.E.2d 661, 663 (Ind.Ct.App.2000), *reh'g denied, trans. denied* 741 N.E.2d 1251 (Ind.2000). "This was nothing more than a trooper engaging nearby residents and conducting a legitimate and reasonable investigation into the discovery of marijuana growing in a field." (Reply Br. at 2.) Felker's residence, it asserts, was an appropriate place to begin the inquiry, as the proximity of the path to Felker's residence "would possibly permit [Felker] the opportunity to observe whoever was cultivating the growing marijuana."[9] (*Id.*)

■ By contrast, when a police officer has, by means of physical force or show of authority, in some way restrained the liberty of a citizen, a "seizure" implicating the Fourth Amendment has occurred. *Luna v. State,* 788 N.E.2d 832, 833–34 (Ind.2003). A seizure occurs when, taking into account all the circumstances surrounding an encounter, the police conduct would communicate to a reasonable person that he was not free to ignore the police presence and go about his business. *Hayes,* 794 N.E.2d at 496.

The State has failed to justify the constitutionality of the actions Trooper Green took after knocking on Felker's door. Therefore, we cannot say all reasonable inferences from the evidence lead to a conclusion opposite that reached by the trial court when it determined "the way the Trooper proceeded after finding that plant was wrong and then probably anything after that is wrong." (Tr. at 18.)

Reviewing decisions from other states in *Hayes,* we noted seizures have been held illegal where, for example, officers entered a defendant's enclosed porch without first asking to enter and deceived defendant about their purpose for wanting to conduct a search, and where officers continued questioning defendant outside his mobile home despite his request that they leave and return later. 794 N.E.2d at 496. By contrast, a seizure was not illegal where police approached defendant in his yard and asked permission to look around for drugs, and the defendant was not threatened or coerced. *Id.*

In *State v. Stickle,* 792 N.E.2d 51 (Ind.Ct.App.2003), *trans. denied* 804 N.E.2d 754 (Ind.2003), we recently addressed whether an encounter with police amounted to a seizure. The police approached Stickle and a companion in a restaurant and stated, "Ma'am, sir, we need you to come with us." *Id.* at 53. After walking outside with the police, Stickle noted his vehicle was "completely blocked in" by two police cars such that it would not have been possible for Stickle to leave in the vehicle. *Id.* at 54. A trooper asked Stick-

---

**9.** The State does not explain how the Trooper's questions regarding whether Felker had been in trouble with the law and the Trooper's request for permission to search Felker's residence would further the goal of learning who Felker might have seen growing the marijuana plant. Nor does it explain why, if the Trooper was conducting only a "casual and brief inquiry," he advised Felker of his *Miranda* rights immediately after noting an odor of an alcoholic beverage from Felker and learning Felker was on probation for operating a vehicle while intoxicated.

le his name and if he knew why the troopers wanted to talk to him. Stickle stated his name and admitted to stealing a cassette tape from a nearby store. During the subsequent interrogation, Stickle informed the troopers that he had a small amount of marijuana in his vehicle. The troopers found marijuana on Stickle's person and in his vehicle.

We noted we were to consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter. *Id.* "What constitutes a restraint on liberty prompting a person to conclude he is not free to leave varies according to the police conduct at issue and the setting in which the conduct occurs." *Id.* Police actions that a reasonable person might interpret as an intrusion on freedom of movement include "operation of a police vehicle in an aggressive manner to either block the person's course or otherwise control the direction or speed of the person," the threatening presence of several officers, or the use of language or tone of voice indicating compliance with the officer's request might be compelled. *Id.* We declined to find clearly erroneous the trial court's determination a reasonable person in Stickle's position would have concluded he was not free to leave and had therefore been "seized." *Id.*

In *Overstreet*, by contrast, we determined an officer's brief encounter with a citizen did not amount to an investigatory stop that required a reasonable suspicion of criminal activity. Overstreet had stopped his vehicle at a gas station. A police officer approached him while Overstreet was pumping air into one of his automobile tires. Overstreet was not detained and the officer did not restrict his movement in any way. The officer had earlier seen Overstreet look into a mailbox and then drive away. He asked Overstreet about his actions at the mailbox and asked him for identification. Overstreet then volunteered that his operator's license was suspended.

We declined to hold that this brief encounter was an investigatory stop:

> Not every encounter between a police officer and a citizen amounts to a seizure requiring objective justification. To characterize every street encounter between a citizen and the police as a seizure, while not enhancing any interest guaranteed by the Fourth Amendment, would impose wholly unrealistic restrictions upon a wide variety of legitimate law enforcement practices.

724 N.E.2d at 664. As long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion on that person's liberty or privacy to require some particularized and objective justification. *Id.*

We noted as examples of circumstances under which a reasonable person would have believed he was not free to leave 1) the threatening presence of several officers; 2) the display of a weapon by an officer; 3) some physical touching of the person of the citizen; or 4) the use of language or tone of voice indicating compliance with the officer's request might be compelled. *Id.* Absent some such evidence, otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person. *Id.* In Overstreet's case, there was no such evidence.

After knocking on the door of Felker's residence, Trooper Green positioned another officer at the front door of Felker's residence. The trooper then walked

around the trailer looking for Felker and detained him. Trooper Green asked Felker's probation status, gave him *Miranda* warnings, asked to search his house, asked him to sit on a swing, and eventually asked him to remove the contents of his pockets. In light of all the circumstances surrounding the Trooper's encounter with Felker, we cannot say the trial court erred to the extent it determined the Trooper's conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter. The Trooper's actions therefore violated Felker's constitutional protections against unreasonable search and seizure and the evidence thereby obtained could not serve as the basis for a search warrant.

We accordingly affirm the grant of Felker's motion to suppress.

BAILEY, J., and SHARPNACK, J., concur.