## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Apr 09 2020, 10:39 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

**APPELLANT PRO SE**

James J. Green III
Carlisle, Indiana

**ATTORNEYS FOR APPELLEE**

Curtis T. Hill, Jr.
Attorney General of Indiana

Caroline G. Templeton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

James J. Green III,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent*

April 9, 2020

Court of Appeals Case No.
18A-PC-3013

Appeal from the Vanderburgh
Circuit Court

The Honorable David D. Kiely,
Judge
The Honorable Kelli E. Fink,
Magistrate

Trial Court Cause No.
82C01-1604-PC-1778

**Baker, Judge.**

[1] James J. Green III appeals the post-conviction court's order denying his petition for post-conviction relief. Green argues that the post-conviction court erroneously determined that he did not receive the ineffective assistance of trial counsel. Finding no error, we affirm.

## Facts

[2] The underlying facts, as described by this Court in Green's direct appeal, are as follows:

> In the late evening of March 7, 2014, Evansville Police Department ("EPD") officers responded to an anonymous tip received by the EPD and Vanderburgh County Sheriff's Office Joint Task Force that methamphetamine was being manufactured in apartment K4 of the Shady Tree Apartments in Evansville. When EPD Officer Nathan Hassler ("Officer Hassler") knocked on the door of apartment K4, Green, the lessee, answered and then stepped outside to talk to the officer.
>
> EPD Officer John Montgomery ("Officer Montgomery") then approached the front door where Officer Hassler and Green were standing. As he approached, he smelled "a slight chemical odor" (Tr. 52) of a solvent that he "believed to be Coleman fuel" coming from the apartment. (Tr. 56.) Based on his training and experience, Officer Montgomery associated the odor with the manufacture of methamphetamine. He then informed Officer Hassler that he smelled a "chemical smell." (Tr. 148.)
>
> Officer Hassler asked Green if anyone else was inside the apartment, and Green stated that his girlfriend, Cherron Roberts ("Roberts"), was in the bedroom. From his experience and training, Officer Hassler knew meth labs "are very dangerous and they can explode[.]" (Tr. 42.) Because "the chemical smell, it's a

safety hazard" (Tr. 151), Officer Hassler entered the apartment without a warrant or Green's consent. Officer Hassler executed the search for the limited purpose of retrieving Roberts from the apartment.

Upon entering the apartment, Officer Hassler observed in plain view on a coffee table a tied corner baggie containing a white powdery substance, which he suspected was methamphetamine. He passed through the living room and discovered Roberts in the back bedroom. Items consistent with the manufacture of methamphetamine, including aluminum foil, lye, a box of cold packs (instant cold compresses), and plastic tubing, were also in plain view on the bedroom floor. Officer Hassler permitted Roberts to put on some clothing and secure her dog in the bathroom before escorting her out of the apartment. He then contacted the Joint Task Force's Methamphetamine Suppression Unit.

Based on information he received from Officer Hassler, Vanderburgh County Sheriff's Office Detective J.J. Budde ("Detective Budde") secured a warrant to search the apartment. When executing the warrant, officers found precursors to and items commonly associated with the manufacture of methamphetamine, including: ninety-six pills (5.6 grams) of pseudoephedrine-based cold medicine in blister packs removed from the boxes, salt, Coleman fuel, Drain Out drain cleaner containing lye (sodium hydroxide), cold compresses containing ammonia nitrate, a lithium battery, Liquid Fire (sulfuric acid), clean plastic bottles with the labels removed, a funnel, aluminum foil, cutting tools, tubing run through a bottle cap, coffee filters, and a digital scale. The apartment's hard-wired smoke detector had been disconnected and removed.

A coffee filter containing a white powdery substance was found in Roberts's purse in the living room. Police found in the bedroom closet a dinner plate containing a white powdery

substance, which the officer collected from the plate and placed in a plastic bag. Subsequent testing by the Indiana State Police laboratory revealed that both the coffee filter and the plate powder tested positive for methamphetamine. A syringe was found in the bedroom closet. A smoking pipe with burnt residue was found on a chest by the bed. Two additional syringes and a spoon were found in a chest drawer next to prescriptions labeled with Green's name.

Officers also found in Roberts's purse receipts from Wal-Mart, Rural King, and Dollar General from February 23, March 4, and March 7, 2014 for purchases of Coleman fuel, salt, a 1.5 liter bottled soda, cold compresses, a lithium battery, and coffee filters. A March 7, 2014 Rural King receipt for the purchase of Drain Out was found in Green's pocket. Green was placed under arrest. Detective Budde later obtained surveillance video from the Wal-Mart, Dollar General, and Rural King stores, which showed Green and Roberts, either together or individually, purchasing items from those stores on February 23, March 4, and March 7, 2014.

*Green v. State*, No. 82A01-1411-CR-474, Slip Op. p. 3-5 (Ind. Ct. App. Sept. 23, 2015).

[3] The State charged Green with Class A felony manufacturing methamphetamine and Class B felony possession of methamphetamine and alleged that he was an habitual substance offender. Green moved to suppress all evidence seized from his apartment, arguing that the evidence was obtained as a result of an illegal search and seizure that violated his constitutional rights. Following a suppression hearing, the trial court denied the motion.

[4] Green's jury trial took place on June 23 and 24, 2014. At the conclusion of the trial, the jury found Green guilty as charged; the trial court later found him also to be an habitual substance offender. Following a sentencing hearing, the trial court sentenced Green to an aggregate term of thirty-eight years imprisonment. Green filed a direct appeal of his convictions and sentences. This Court affirmed. *Id.* at 2.

[5] Green filed a petition for post-conviction relief on April 7, 2016, alleging that he had received the ineffective assistance of both trial and appellate counsel.[1] Green later filed an amended petition, focusing on the assistance of trial counsel. On August 10, 2017, the post-conviction court ordered that the matter would proceed by affidavit. Green did not file any affidavits or proposed findings of fact and conclusions of law. On September 18, 2018, the post-conviction court issued its order denying Green's petition. Green now appeals.

# Discussion and Decision

[6] Green argues that the post-conviction court erroneously determined that he did not receive the ineffective assistance of trial counsel. The general rules regarding the review of a ruling on a petition for post-conviction relief are well established:

> "The petitioner in a post-conviction proceeding bears the burden
> of establishing grounds for relief by a preponderance of the

---

[1] Initially, the State Public Defender's Office entered an appearance on Green's behalf. It later withdrew that appearance and he proceeded pro se.

evidence." *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004). "When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment." *Id.* To prevail on appeal from the denial of post-conviction relief, a petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Weatherford v. State*, 619 N.E.2d 915, 917 (Ind. 1993). Further, the post-conviction court in this case made findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6). Although we do not defer to the post-conviction court's legal conclusions, "[a] post-conviction court's findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." *Ben-Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind. 2000) (quotation omitted).

*Hollowell v. State*, 19 N.E.3d 263, 268-69 (Ind. 2014).

[7]     Green argues that he received the ineffective assistance of trial counsel. A claim of ineffective assistance of trial counsel requires a showing that: (1) counsel's performance was deficient by falling below an objective standard of reasonableness based on prevailing professional norms; and (2) counsel's performance prejudiced the defendant such that "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Davidson v. State*, 763 N.E.2d 441, 444 (Ind. 2002) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "A reasonable probability arises when there is a 'probability sufficient to undermine confidence in the outcome.'" *Grinstead v. State*, 845 N.E.2d 1027, 1031 (Ind. 2006) (quoting *Strickland*, 466 U.S. at 694). "Failure to satisfy either of the two

prongs will cause the claim to fail." *Gulzar v. State*, 971 N.E.2d 1258, 1261 (Ind. Ct. App. 2012).

### *Failure to Investigate*

First, Green argues that his attorney was ineffective for failing to investigate the anonymous tip that led to the officers' presence at his home, the presence of the chemical smell noticed by Officer Montgomery, and Officer Hassler's body camera footage. To establish that counsel was ineffective for failing to investigate, a petitioner is required to go beyond the trial record to show what the investigation would have produced had it been undertaken. *McKnight v. State*, 1 N.E.3d 193, 201 (Ind. Ct. App. 2013).

With respect to the anonymous tip and the chemical smell, Green seems to argue that further investigation would have revealed that the anonymous tip and the chemical smell were ruses invented by the police to gain access to his residence. But Green has failed to present any evidence outside the trial record to show what, precisely, trial counsel should have done to investigate. He has likewise failed to present any evidence that the tip or the chemical smell were, in fact, false in some way. As such, he has failed to meet his burden as a post-conviction petitioner.

We also note, briefly, that even without a tip, the officers were free to approach the front door of Green's apartment, knock on the door, and ask to speak with him. *E.g.*, *Hayes v. State*, 794 N.E.2d 492, 498 (Ind. Ct. App. 2003). Consequently, the existence, source, and circumstances of the tip would not

have changed the results of the trial. Then, once the officers were there, probable cause to enter the apartment formed once Officer Montgomery smelled the solvent associated with methamphetamine production and the police learned that the apartment was occupied. *Holder v. State*, 847 N.E.2d 930, 939 (Ind. 2006) (holding that a belief, based on observation of odors emanating from a home, that an occupied residence contains a methamphetamine laboratory presents exigent circumstances permitting a warrantless search for the occupants' safety). And there is simply no evidence in the record suggesting that the odor was falsified.[2]

[11] With respect to Officer Hassler's body camera footage, Green presented no evidence by way of affidavit or otherwise that suggests what may have been in that footage or what significance it may have had. Therefore, he has not met his burden as a post-conviction petitioner.

[12] In sum, the post-conviction court did not err by finding that Green's trial attorney was not ineffective based on the alleged failures to investigate.

---

[2] Green seems to suggest that because the probable cause affidavit, which was prepared by Officer Hassler, does not mention the odor, his attorney should have cross-examined the officer on that basis. But it was Officer Montgomery, not Officer Hassler, who noticed the odor. Neither Officer Montgomery's report nor the search warrant application are included in the post-conviction record, so we have no way of knowing what is in those documents. Furthermore, trial counsel vigorously cross-examined Officer Hassler, but elected to focus on questions intended to further the defense theory that the items found in the apartment belonged to Roberts rather than Green. *See Waldon v. State*, 684 N.E.2d 206, 208 (Ind. Ct. App. 1997) ("It is well settled that the nature and extent of cross-examination is a matter of strategy delegated to trial counsel.") Therefore, these arguments are unavailing.

## Misstated Facts

[13] In the brief supporting the motion to suppress, trial counsel inadvertently stated that Officer Hassler, rather than Officer Montgomery, smelled the chemical odor.[3] Isolated mistakes, such as misidentifying the officer who smelled the odor, do not support a finding of deficient performance. *Lambert v. State*, 743 N.E.2d 719, 741-42 (Ind. 2001) (deficient performance cannot be established by pointing only to an isolated mistake or carelessness). Moreover, which officer smelled the chemical odor does not change the legality of the entry into Green's apartment. Finally, the post-conviction judge, who was also the trial judge who heard and ruled on the motion to suppress, noted that "[a]ny incorrect information in [Green's] brief would not have been relied upon by the trial court when making a decision on [Green's] Motion to Suppress." Appellant's App. Vol. II p. 29. Consequently, this argument is unavailing.

## Failure to Call Witness

[14] Next, Green argues that his attorney was ineffective for failing to call Roberts—the other resident in his apartment—as a witness. A decision regarding what witnesses to call is a matter of trial strategy that we will not second-guess. *Johnson v. State*, 832 N.E.2d 985, 1003 (Ind. Ct. App. 2005). In the case of an

---

[3] Green also suggests that trial counsel was ineffective by alleging the presence of an anonymous tip. This, however, was not a mistake, as Officer Hassler testified at the motion to suppress hearing that police received an anonymous tip that the residents in Green's apartment were manufacturing methamphetamine. And as noted above, there is no evidence in the record remotely tending to suggest that the anonymous tip was a ruse or in any way falsified.

uncalled witness, our Supreme Court has required that the petitioner offer evidence as to what the testimony of the proposed witness would have been. *Lee v. State*, 694 N.E.2d 719, 722 (Ind. 1998). Here, Green submitted no such evidence. As a result, we have no way of knowing what Roberts would have testified to and Green has failed to meet his burden to show that, had she been called to testify, the result of the trial would have been different.

### *Jury Instruction*

[15] Next, Green argues that trial counsel was ineffective for deciding not to tender a jury instruction on the lesser-included offense of possession of precursors.[4] Trial counsel made a reasonable strategic decision to pursue an all-or-nothing strategy, focusing on a theory that Green did not knowingly possess any of the items in the apartment and that, instead, the items were all possessed by Roberts. Counsel consistently relied on that theory throughout the trial. This is potentially a risky tactical decision, but had it been successful, Green would have been acquitted rather than convicted of a lesser-included offense. We decline to second-guess counsel's tactical decisionmaking. *See Brown v. State*, 24 N.E.3d 529, 535 (Ind. Ct. App. 2015) (finding that a tactical decision not to tender a lesser-included offense instruction does not constitute ineffective assistance of counsel because to pursue a lesser-included offense "would have

---

[4] The State acknowledges that possession of precursors is a lesser-included offense of manufacturing methamphetamine. Appellee's Br. p. 24 n.3 (citing *Bush v. State*, 772 N.E.2d 1020, 1024 (Ind. Ct. App. 2002)).

all but guaranteed a conviction"). Consequently, the post-conviction court did not err on this basis.

## Conflict of Interest

[16]     Finally, Green argues that he received the ineffective assistance of trial counsel because his attorney had a conflict of interest. To establish ineffective assistance based on a conflict, Green must demonstrate that trial counsel had an actual conflict of interest and that the conflict adversely impacted counsel's performance. *Woods v. State*, 701 N.E.2d 1208, 1223 (Ind. 1998). To establish an adverse impact on performance, the petitioner must show a plausible strategy or tactic that might have been pursued but for counsel's conflict. *Id.*

[17]     Green alleges that trial counsel had a personal relationship with Green's former sister-in-law, who had hired the attorney on Green's behalf. Beyond a bald assertion, Green has presented no evidence that a personal relationship actually existed, nor has he provided any reason for why the existence of such a relationship would have created a conflict.

[18]     Moreover, even if we assume solely for argument's sake that counsel had a conflict of interest, Green has presented no evidence that counsel's performance was adversely impacted. Green merely makes another unsupported assertion that, in hindsight, he believes there was a general decline in counsel's performance. That falls far short of the showing required to warrant relief based on a conflict of interest. Consequently, the post-conviction court did not err by finding that counsel was not ineffective for this reason.

The judgment of the post-conviction court is affirmed.

Bradford, C.J., and Pyle, J., concur.