## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 22 2020, 10:23 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Evan B. Broderick
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Courtney Staton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Wayne Williams, *Appellant-Defendant,* | April 22, 2020 |
| | Court of Appeals Case No. 19A-CR-1924 |
| v. | Appeal from the Madison Circuit Court |
| State of Indiana, *Appellee-Plaintiff* | The Honorable David A. Happe, Judge |
| | Trial Court Cause No. 48C04-1703-F6-806 |

**Baker, Judge.**

[1] Wayne Williams appeals his convictions for Level 6 Felony Maintaining a Common Nuisance,[1] Level 6 Felony Dealing in a Synthetic Drug,[2] Class A Misdemeanor Resisting Law Enforcement,[3] and Class B Misdemeanor Possession of Marijuana,[4] arguing that the trial court erred when it admitted evidence that stemmed from what Williams contends was an unconstitutional interrogation and search. Finding no error, we affirm.

## Facts

[2] On March 23, 2017, Detective Lance Blossom and Sergeant Chad Boynton of the Madison County Drug Task Force drove to Williams's home in Anderson. The officers had received anonymous tips mentioning Williams and his wife by name and stating that there had been drug activity occurring at Williams's house. The tipster also said that Williams was "bringing in large quantities of drugs from . . . Chicago, Illinois." Tr. Vol. II p. 65.

[3] Sergeant Boynton and Detective Blossom walked up to Williams's front door, introduced themselves as law enforcement, and knocked. While Sergeant Boynton knocked, Detective Blossom heard a noise coming from the side of the house and saw someone—who later identified himself as Williams—exit

---

[1] Ind. Code § 35-45-1-5(c).

[2] Ind. Code § 35-48-4-10.5(c)(1), -10.5(e)(1).

[3] Ind. Code § 35-44.1-3-1(a)(3).

[4] I.C. § 35-48-4-11(a)(1).

through a door and get into a pickup truck in the driveway. The two officers then walked around and engaged Williams in conversation. Sergeant Boynton identified himself and Detective Blossom as police officers and explained that they had received anonymous tips about drug activity at this residence. Williams denied that anything illegal was happening inside, so Sergeant Boynton asked if Williams could walk them through his house to confirm this. Williams asked if he could first tie up his dogs before taking the officers through the house because the canines were aggressive.

[4] During their conversation, Williams "did express some concerns about letting [the officers] in the house[] [and] whether or not he should ask a lawyer some questions[.]" *Id.* at 78. Williams also expressed some "hesitation" about actually letting the two officers in the house. *Id.* at 77. To calm the situation and to ease Williams's nerves, Sergeant Boynton and Detective Blossom told Williams that "we weren't looking to take anyone to jail for possession – possessing marijuana if it was like a dime bag." *Id.* at 96.

[5] After some time, Williams confessed to being in possession of marijuana. Thinking that he had probable cause to believe there was criminal activity afoot and to "respect [Williams's] Constitutional Rights," tr. vol. III p. 43, Sergeant Boynton attempted to *Mirandize*[5] Williams. However, Williams became more agitated and combative with the officers. Each time Sergeant Boynton tried to

---

[5] *Miranda v. Arizona*, 384 U.S. 436 (1966).

advise Williams of his rights, Williams interrupted him, shifted his stance and position, and indicated at different times that he had placed the small amount of marijuana in various locations, including inside the house.

[6] Eventually, Williams stood up from his place on the front steps and told the officers to "come on, come on, come on." *Id.* at 45. The two officers followed Williams to the back of his house and discovered that some of Williams's dogs were unrestrained. Not heeding Sergeant Boynton's concerns about getting bitten, Williams continued walking towards his house. Sergeant Boynton then fired a warning shot near one of the dogs to scare it away and called for backup. Meanwhile, Detective Blossom followed Williams into the home, but Williams had already gone inside and locked the door. Detective Blossom tried to kick down the door, but Williams, with an unknown object in this hand, quickly opened the door. Unsure of what the object was, Detective Blossom ordered Williams to the ground. Williams followed orders and was detained. Detective Blossom discovered that the object in Williams's hand was a cell phone.

[7] Williams eventually started to calm down and cooperate with law enforcement. Sergeant Boynton approached Williams and read him his *Miranda* and *Pirtle*[6] rights. Williams stated that he understood his rights and consented to a protective search, which Sergeant Boynton and backup conducted. Ultimately, the officers discovered 1.98 grams of a substance later determined to be

---

[6] *Pirtle v. State*, 263 Ind. 16, 323 N.E.2d 634 (1975).

marijuana, 83.89 grams of a substance later determined to be synthetic marijuana, plastic baggies with labels, bins containing the drugs and other paraphernalia, and tools used for measuring.

[8] On March 24, 2017, the State charged Williams with one count each of Level 6 felony maintaining a common nuisance, Level 6 felony dealing in a synthetic drug, Class A misdemeanor resisting law enforcement, and Class B misdemeanor possession of marijuana. On March 12, 2019, Williams filed a motion to suppress, arguing that any incriminating statements made by him were elicited from a custodial interrogation without advisement of his *Miranda* rights in violation of the Fifth Amendment to the United States Constitution and Article 1, Section 14 of the Indiana Constitution. Additionally, Williams argued that any evidence obtained from his residence should be suppressed because it was the result of a warrantless, unreasonable search in violation of the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution.

[9] Following a July 8, 2019, hearing on the matter, the trial court denied Williams's motion and proceeded to a July 10, 2019, jury trial. During his trial, Williams objected to the admission of his statements and all items obtained from inside his home—the same evidence involved in the motion to suppress. The trial court repeatedly overruled his objections. The jury ultimately found Williams guilty as charged. Following Williams's July 16, 2019, sentencing hearing, the trial court sentenced Williams to an aggregate term of two and one-half years in the Department of Correction. Williams now appeals.

# Discussion and Decision

[10] Williams's sole argument on appeal is that the trial court erred when it admitted evidence discovered as a result of the encounter at his home. Specifically, *Williams* contends that the officers illegally obtained evidence via a custodial interrogation without notifying him of his *Miranda* rights—a violation of both the Fifth Amendment and Article 1, Section 14—and via a warrantless, unreasonable search—a violation of both the Fourth Amendment and Article 1, Section 11.

[11] When there is a challenge to a trial court's admission of evidence, we will reverse only when the decision is clearly against the logic and effect of the facts and circumstances before it. *Fansler v. State*, 100 N.E.3d 250, 253 (Ind. 2018). This Court will sustain a trial court's decision regarding the admission of evidence "if it can be done on any legal ground apparent in the record." *Jester v. State*, 724 N.E.2d 235, 240 (Ind. 2000).

# I. Interrogation and Testimony

[12] First, Williams argues that Sergeant Boynton and Detective Blossom elicited statements from him during a custodial interrogation without first notifying him of his *Miranda* rights, a violation of both the Fifth Amendment to the United States Constitution and Article 1, Section 14 of the Indiana Constitution. "[W]here, as here, a constitutional violation is alleged, the proper standard of appellate review is de novo." *Dycus v. State*, 108 N.E.3d 301, 304 (Ind. 2018).

The Fifth Amendment to the United States Constitution provides generally that a criminal suspect cannot be forced to incriminate himself. Similarly, pursuant to Article 1, Section 14 of the Indiana Constitution, "[n]o person, in any criminal prosecution, shall be compelled to testify against himself." This prohibits coercing any suspect into making admissions without first advising him of his rights. If law enforcement fails to advise a suspect of his rights, "the prosecutor cannot use any statements the subject does make against him in court." *Kelly v. State*, 997 N.E.2d 1045, 1053 (Ind. 2013).

Here, Williams contends that Sergeant Boynton and Detective Blossom, before reading him his *Miranda* rights, coerced him through a custodial interrogation into admitting that he was in possession of marijuana. Therefore, as Williams argues, any incriminating statements he made during that interrogation cannot be used in a court of law.

To determine if a person is in police custody, we objectively evaluate whether a reasonable person under the same circumstances would believe that they were in custody or free to leave. *Hammond v. State*, 82 N.E.3d 880, 884 (Ind. Ct. App. 2017). This Court has looked at whether a defendant was handcuffed or physically restrained in any way, or whether the police have somehow implied that the suspect was not free to leave without consequence. *See generally Meriwether v. State*, 984 N.E.2d 1259, 1263 (Ind. Ct. App. 2013). Based on these criteria, we find that Williams was not in police custody.

[16] Despite arguments to the contrary by Williams, Sergeant Boynton and Detective Blossom were permitted, as police officers, to come up to Williams's door, knock, and ask to speak with him. This is commonly referred to as a routine "knock and talk" investigation. *Hayes v. State*, 794 N.E.2d 492, 496 (Ind. Ct. App. 2003) (defining a knock-and-talk investigation as one where officers come to an individual's door, clearly identify themselves as law enforcement, ask to speak with someone about a complaint, and request permission to search the home). Such a tactic "does not per se violate the Fourth Amendment." *Id.*

[17] Thereafter, the record demonstrates that Detective Blossom saw Williams leaving through his side door and attempting to get into a pickup truck. They all talked for a while before Sergeant Boynton asked if the officers could go inside his home and look around. Williams became visibly nervous and asked if he could first go and tie up his dogs because they were aggressive. Both officers noticed that Williams's demeanor changed and that he was hesitant to let the officers inside. Sergeant Boynton calmly told Williams that "we weren't looking to take anyone to jail for possession – possessing marijuana if it was like a dime bag." Tr. Vol. II p. 96. It was at this point that Williams admitted to possessing a small amount of marijuana and that the situation got out of hand. "Williams became excitable, interrupted officers and began walking towards the back of his residence." Appellant's Br. p. 6. Sergeant Boynton then had to deal with Williams's dogs and Detective Blossom had to go after Williams, who by that point had already locked himself inside his house.

[18] Nothing in these facts indicates to us that Williams was ever in police custody. Neither Sergeant Boynton nor Detective Blossom ever implied that there would be some legal consequence if Williams were to end the conversation, Williams was never handcuffed, the officers never surrounded Williams or exhibited the threat of force, and Williams himself acknowledged that it was a routine conversation, despite his initial hesitation. And Sergeant Boynton eventually administered the *Miranda* and *Pirtle* advisements before conducting the search of Williams's home and before arresting him.[7] As such, any testimony uttered by Williams—including the admission that he possessed marijuana and that he was storing contraband in his house—could have been used against him.

[19] Thus, under both the federal and state constitutions, we find that the trial court did not err by admitting Williams's statements into evidence because the officers did not violate Williams's right against self-incrimination.

## II. Search and Seizure

[20] Moreover, because Williams was advised of his *Miranda* and *Pirtle* rights and because he consented to a search of his home, he cannot now claim a violation of the Fourth Amendment to the United States Constitution or Article 1, Section 11 of the Indiana Constitution.

---

[7] Further, Sergeant Boynton continuously tried to administer both the *Miranda* and *Pirtle* rights over the course of their conversation, but Williams kept interrupting him. In other words, Sergeant Boynton attempted to follow proper protocol.

[21]  It is well established that:

> To constitute a valid waiver of Fourth Amendment rights, a consent must be the intelligent relinquishment of a known right or privilege. Such waiver may not be conclusively presumed from a verbal expression of assent unless the court determines, from the totality of the circumstances, that the verbal assent reflected an understanding, uncoerced, and unequivocal election to grant the officers a license which the person knows may be freely and voluntarily withheld.

*Navarro v. State*, 855 N.E.2d 671, 675 (Ind. Ct. App. 2006) (internal citation omitted). And based on the totality of the circumstances here, it is unequivocal that Williams himself consented to a search of his house after Sergeant Boynton read him his *Miranda* and *Pirtle* rights. It is also undisputed that Williams stated that he affirmatively understood his rights under the law following the advisement. Although Williams hesitated, he gave permission to search after he incriminated himself and consented to the officers' requests.

[22]  Because Williams consented to the search after being advised of his rights, we need not conduct any further analysis under the Fourth Amendment or Article 1, Section 11 about whether the warrantless search was unconstitutional.

[23]  In sum, the trial court did not err when it admitted evidence found as a result of the search of Williams's home.

[24]  The judgment of the trial court is affirmed.

Bradford, C.J., and Pyle, J., concur.