John REDDEN, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 31A04–0509–CR–522.

Court of Appeals of Indiana.

July 12, 2006.

Transfer Denied Sept. 19, 2006.

Matthew Jon McGovern, Evansville, IN, for Appellant.

Steve Carter, Attorney General of Indiana, Matthew D. Fisher, Deputy Attorney General, Indianapolis, IN, for Appellee.

## OPINION

SHARPNACK, Judge.

John Redden appeals his convictions and sentences for possession of marijuana as a class A misdemeanor,[1] possession of two or more precursors while possessing a firearm as a class C felony,[2] possession of methamphetamine while possessing a firearm as a class C felony,[3] and dumping controlled substance waste as a class D felony.[4] Redden raises four issues, which we revise and restate as:

I. Whether the trial court abused its discretion by admitting evidence seized from Redden's property;

II. Whether the evidence is sufficient to sustain Redden's conviction for dumping controlled substance waste as a class D felony;

III. Whether the trial court abused its discretion in sentencing Redden; and

IV. Whether Redden's ten-year sentence is inappropriate in light of the nature of the offense and the character of the offender.

We affirm.

The relevant facts follow. On January 15, 2005, a confidential informant told Indiana State Police Detective Barry Brown that methamphetamine was being manufactured at a residence in New Amsterdam, Indiana. The informant, who had previously provided Detective Brown with reliable information, identified the residence as the two drove past.

On January 25, 2005, between 10:00 a.m. and 10:30 a.m., Detective Brown returned to the residence with Indiana State Police Trooper Mark Strange. Neither officer saw a "No Trespassing" sign when they entered the property. Because the front porch of the residence was inaccessible due to "clutter or junk," Detective Brown and Trooper Strange approached the back door. Transcript at 287.

---

1. Ind.Code § 35–48–4–11 (2004).

2. Ind.Code § 35–48–4–14.5(b) (2004) (subsequently amended by Pub.L. No. 192–2005, § 8 (eff. July 1, 2005)).

3. Ind.Code § 35–48–4–6 (2004).

4. Ind.Code § 35–48–4–4.1 (2004).

Detective Brown stood on the porch and knocked on the back door, while Trooper Strange stood below the porch steps. Redden answered the door, and Detective Brown told Redden that they were "conducting a criminal investigation and requested . . . permission to come inside." *Id.* at 289–290. As Detective Brown was speaking to Redden, Detective Brown detected a strong chemical odor common in methamphetamine manufacturing. Redden then exited the house, shut the door, and asked if Detective Brown had a warrant. Detective Brown asked Redden why he needed a warrant, and Redden replied, "Because I have marijuana inside my residence." *Id.* at 294. Detective Brown then advised Redden of his *Miranda* rights. At that time, Detective Brown also saw a white jug of muriatic acid on the porch and a garbage can containing what he believed to be "pill soak" next to the porch. *Id.* at 304. Both muriatic acid and pill soak are part of the process in manufacturing methamphetamine. Based upon Redden's admission regarding the marijuana and the presence of muriatic acid and pill soak, Detective Brown sent Trooper Strange to get a warrant to search Redden's residence and called the methamphetamine investigation lab team to the scene.

Trooper Strange's affidavit for the search warrant provided:

Mark Strange, officer with the Indiana State Police, affirms under the pains and penalties of perjury that:

1. He believes and has good cause to believe that marijuana; paraphernalia; precursors to methamphetamine and/or methamphetamine will be found in, on or about property owned and/or occupied by John Redden at 7020 New Amsterdam Road, SW, Central, Harrison County, Indiana. . . .

2. In support of my assertions as to the existence of probable cause the following facts and circumstances are offered:

(a) That on January 26, 2005, Barry Brown, an Indiana State Police Officer received information from a person who he believes to be credible and reliable. A person he has used in the past who has led to arrest and/or seizures of unlawful drugs and/or precursors to methamphetamine. The person told Barry Brown that he would find marijuana and/or methamphetamine at a home located at 7020 New Amsterdam Road, SW, Central, Harrison County, Indiana.

(b) That Barry Brown and other law enforcement officers met at this location. Barry Brown knocked on the door. A white male who later identified himself as John Redden answered the door. At that time Barry Brown could smell the odor of chemicals used in the production of methamphetamine. Barry Brown recognized the odor by his training and experience as a police officer and past arrests and/or seizures of meth labs. Barry Brown also saw in plain view muriatic acid and glass ware containing what appeared to be "pill dough."

(c) That Barry Brown identified himself as a police officer and told John Redden why he was there. Barry Brown asked if he could enter the home so that they could discuss the call he had received concerning the drugs and/or precursors that were reported to be in his home. John Redden said "No, you can't come in . . . I have marijuana in the house" and indi-

cated that he did not want to go to jail for the marijuana. John Redden told Barry Brown to go get a search warrant.

The foregoing represents the grounds for my belief. Therefore, I respectfully request the Court issue a Search Warrant directing a search for any and all illegal drugs and/or paraphernalia and/or precursors to methamphetamine and/or a "meth dump" and/or ... papers or things related to the dealing and/or manufacture of illegal drugs ....

Appellant's Appendix at 187–188.

After Trooper Strange returned with the search warrant, the lab team searched the house and, in various locations throughout the house, found 10.83 grams of methamphetamine, 3.68 grams of marijuana, glass pipes, foil, rolling papers, a loaded .22 caliber revolver hidden inside the couch, eighteen twenty-four count boxes of pseudoephedrine totaling 25.92 grams, denatured alcohol, strike plates removed from matchboxes, filters with red phosphorus, tincture of iodine, hydrogen peroxide, a reflux condenser, coffee filters, muriatic acid, several cans of organic solvent, and various extraction vessels. Everything needed to manufacture methamphetamine using the red phosphorous method was found inside Redden's house. Outside of Redden's residence, the officers found a backhoe next to a hole that contained empty containers of denatured alcohol, camp fuel, xylene, and naphtha.

The State charged Redden with:[5] (1) Count I, possession of precursors as a class D felony;[6] (2) Count II, possession of marijuana as a class A misdemeanor; (3) Count III, possession of two or more precursors while possessing a firearm as a class C felony; (4) Count IV, possession of methamphetamine while possessing a firearm as a class C felony; (5) Count V, possession of precursors with intent to manufacture methamphetamine as a class D felony;[7] (6) Count VI, dumping controlled substance waste as a class D felony; and (7) Count VII, possession of methamphetamine as a class C felony.[8]

Redden filed a motion to suppress the evidence taken from his property and argued that the "knock and talk" investigation and the subsequent search violated Redden's rights under the Fourth Amendment of the United States Constitution and Article I, Section 11 of the Indiana Constitution. Redden also argued that the search warrant was based upon hearsay. The trial court denied Redden's motion.

After a trial, the jury found Redden guilty as charged. The trial court found two aggravating factors: (1) Redden's criminal history, and (2) the fact that Redden committed the offenses in the presence of minors. The trial court sentenced Redden to six months for the possession of marijuana as a class A misdemeanor conviction, four years for the possession of precursors while in possession of a firearm as a class C felony conviction, four years for the methamphetamine possession while in possession of a firearm as a class C felony conviction, and eighteen months for the dumping controlled substance waste conviction. The trial court did not enter judgment of conviction on the remaining guilty verdicts. The trial court ordered that the sentences be served consecutively

---

5. The State also charged Redden with possession of paraphernalia as a class A misdemeanor, Ind.Code § 35–48–4–8.3. This charge was dismissed on the State's motion.

6. Ind.Code § 35–48–4–14.5.

7. *Id.*

8. Ind.Code § 35–48–4–6.

for an aggregate sentence of ten years in the Indiana Department of Correction.

## I.

The first issue is whether the trial court abused its discretion by admitting evidence seized from Redden's property. We review the trial court's ruling on the admission of evidence for an abuse of discretion. *Noojin v. State,* 730 N.E.2d 672, 676 (Ind. 2000). We reverse only where the decision is clearly against the logic and effect of the facts and circumstances. *Joyner v. State,* 678 N.E.2d 386, 390 (Ind.1997), *reh'g denied.*

Redden argues that the trial court abused its discretion by admitting evidence found at his home because the search violated his rights under the Fourth Amendment of the United States Constitution and Article I, Section 11 of the Indiana Constitution. Redden also argues that the trial court abused its discretion by admitting evidence discovered pursuant to the search warrant because the search warrant was based upon hearsay. We will address each argument separately.

### A. *Fourth Amendment.*

■ We first note that Redden did not object at trial to Detective Brown's testimony regarding Redden's admission that he had marijuana inside the house and did not object to Detective Brown's testimony regarding the chemical odor coming from Redden's house. Redden has waived any argument regarding the admission of this evidence. *See Wright v. State,* 593 N.E.2d 1192, 1194 (Ind.1992) ("When the trial court denies a motion to suppress evidence ..., the moving party must renew his objection to admission of the evidence at trial. If the moving party does not object to the evidence at trial, then any error is waived.") (citation omitted), *cert. denied,* 506 U.S. 1001, 113 S.Ct. 605, 121 L.Ed.2d 540 (1992). However, Redden did object to the other evidence found at his residence. Waiver notwithstanding, we will address Redden's arguments.

#### 1. *Knock and Talk Investigations.*

■ Redden first argues that his Fourth Amendment rights were violated because he was "seized" when the officers knocked on his door and asked him questions. The Fourth Amendment to the Constitution of the United States protects citizens against unreasonable searches and seizures. *Trimble v. State,* 842 N.E.2d 798, 801 (Ind.2006), *reh'g granted in part by* 848 N.E.2d 278 (Ind.2006). A knock and talk investigation "involves officers knocking on the door of a house, identifying themselves as officers, asking to talk to the occupant about a criminal complaint, and eventually requesting permission to search the house." *Hayes v. State,* 794 N.E.2d 492, 496 (Ind.Ct.App.2003), *trans. denied.* Such "knock and talk" investigations do not per se violate the Fourth Amendment. *Id.*

■ "The prevailing rule is that, absent a clear expression by the owner to the contrary, police officers, in the course of their official business, are permitted to approach one's dwelling and seek permission to question an occupant." *Id.* "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude a 'seizure' has occurred." *Id.* (quoting *State v. Carlson,* 762 N.E.2d 121, 125 (Ind.Ct.App.2002)). A seizure does not occur simply because a police officer approaches a person, asks questions, or requests identification. *Id.* Courts examining the Fourth Amendment implications of the knock and talk procedure have held that a seizure occurs when, "taking into account all of the circumstances surrounding the encounter, the police conduct

would 'have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.'" *Id.* (citing *Kaupp v. Texas*, 538 U.S. 626, 629, 123 S.Ct. 1843, 1845, 155 L.Ed.2d 814 (2003)

According to Redden, Detective Brown and Trooper Strange's knock and talk investigation violated these principles, and he was seized because he "was confronted with two armed officers" just feet away and because they attempted to deceive Redden by asking to come inside because it was cold outside. Appellant's Brief at 13. Redden further contends that he had a "No Trespassing" sign posted on his property and, although he refused to admit the officers into the house, they continued to question him and push for admittance into the house.

While we have noted that a knock and talk investigation is "inherently coercive to some degree," we cannot say that an illegal seizure occurred here. *Hayes,* 794 N.E.2d at 496. Here, Redden answered the door, and Detective Brown asked permission to come inside and talk to Redden about a criminal investigation. Although Redden contends that the officers ignored a "No Trespassing" sign, the officers testified that they did not see a sign, and we cannot reweigh this evidence. Moreover, simply knocking on the door and asking questions is not enough for us to conclude that a seizure occurred. Despite the fact that the officers were armed and were asking to come inside, Redden had the presence of mind to deny them permission to enter. Under the totality of the circumstances, we cannot say that a reasonable person would have felt that "he was not at liberty to ignore the police presence and go about his business." *Id.* Thus, no Fourth Amendment violation occurred as a result of the knock and talk investigation. *See, e.g., id.* at 498 (holding that no illegal seizure occurred where there was no evidence that the officers pounded on the door or had drawn their weapons when defendant answered the door, there was no evidence that any of the officers raised their voices or commanded the defendant to let them enter, the officers merely asked the defendant for permission to enter the room to discuss complaints of drug activity, and the defendant opened the door and allowed the officers inside).

2. *Plain View.*

■ Redden also argues that the muriatic acid and the pill soak did not fall within the plain view exception to the Fourth Amendment. In general, the plain view doctrine allows a police officer to seize items when he inadvertently discovers items of readily apparent criminality while rightfully occupying a particular location. *Jones v. State,* 783 N.E.2d 1132, 1137 (Ind.2003). The initial intrusion must have been authorized under the Fourth Amendment, and the items must be in plain view. *Id.* Finally, the incriminating nature of the evidence must be immediately apparent. *Id.*

■ Historically, "the curtilage of the home, the area immediately surrounding the residence, has been considered within the purview of the Fourth Amendment and protected from unreasonable searches and seizures." *Rook v. State,* 679 N.E.2d 997, 999 (Ind.Ct.App.1997). However, "there is no Fourth Amendment protection for activities or items that, even if within the curtilage, are knowingly exposed to the public." *Trimble,* 842 N.E.2d at 802. The Indiana Supreme Court recently held:

[P]olice entry onto private property and their observations do not violate the Fourth Amendment when the police have a legitimate investigatory purpose for being on the property and limit their

entry to places visitors would be expected to go, such as walkways, driveways, and porches. "The route which any visitor to a residence would use is not private in the Fourth Amendment sense, and thus if police take that route for the purpose of making a general inquiry or for some other legitimate reason, they are free to keep their eyes open . . . ." 1 Wayne R. LaFave, *Search and Seizure: A Treatise on The Fourth Amendment* § 2.3(e), at 592–93 (4th ed.2004) (internal quotations and footnotes omitted). *Id.* Which areas of a given piece of real estate may reasonably be viewed as open to visitors is fact-specific. *Id.*

Here, the officers could not knock on the front door because the front porch was inaccessible due to junk and clutter. The officers drove to a "turn-around circle," parked their vehicles, and then knocked on the back door of the residence. Transcript at 288. After Redden answered the door, Detective Brown also smelled a strong chemical odor common in methamphetamine manufacturing and Redden admitted to the officers that he had marijuana inside the house. Detective Brown then saw muriatic acid on the porch and pill soak as he was stepping off of the porch. We conclude that the officers here had a legitimate investigative basis for being on the property and limited their entry to places visitors would be expected to go. The muriatic acid and the pill soak were in Detective Brown's plain view. Further, Redden makes no argument that the incriminating nature of the evidence was not

immediately apparent.[9] *See, e.g., Traylor v. State*, 817 N.E.2d 611, 616 (Ind.Ct.App. 2004) (holding that no Fourth Amendment violation occurred where an officer knocked on the defendant's back door and saw an HCl generator next to the back door), *reh'g denied, trans. denied.*

### B. *Indiana Constitution.*

■■■■■ Redden also argues that the knock and talk investigation and resulting evidence violated his rights under Article I, Section 11 of the Indiana Constitution, which provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

Although this language tracks the Fourth Amendment verbatim, we proceed somewhat differently when analyzing the language under the Indiana Constitution than when considering the same language under the Federal Constitution. *Trimble*, 842 N.E.2d at 803. "Instead of focusing on the defendant's reasonable expectation of privacy, we focus on the actions of the police officer, concluding that the search is legitimate where it is reasonable given the totality of the circumstances." *Id.* We will consider the following factors in assessing reasonableness: "1) the degree of concern, suspicion, or knowledge that a violation

9. Redden also argues that Detective Brown's detection of a chemical odor did not provide probable cause to search the home. We need not address this issue because in addition to the odor, Redden admitted that he had marijuana inside the house and Detective Brown saw muriatic acid and pill soak near the back porch. Thus, probable cause existed. However, we note that the Indiana Supreme Court recently held that "a belief that an occupied residence contains a methamphetamine laboratory, which belief is found on probable cause based largely on observation of odors emanating from the home, presents exigent circumstances permitting a warrantless search for the occupants' safety." *Holder v. State*, 847 N.E.2d 930 (Ind.2006).

has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs." *Id.* (quoting *Litchfield v. State,* 824 N.E.2d 356, 361 (Ind.2005)).

Here, Detective Brown visited Redden based upon a tip from a known reliable confidential informant. The officers stayed within normally accessible areas of Redden's property and simply knocked on the door. When Redden answered the door, Detective Brown smelled a chemical odor, and Redden admitted that he had marijuana inside the house. At that point Detective Brown read Redden his *Miranda* rights and saw items associated with the manufacture of methamphetamine on and near the back porch. The officers then obtained a search warrant before searching Redden's house and property. Under the totality of the circumstances, the officers' knock and talk investigation and the subsequent discovery of the evidence was reasonable. *See, e.g., Traylor,* 817 N.E.2d at 616 (holding that no violation of Article I, Section 11 of the Indiana Constitution occurred where an officer knocked on the defendant's back door and saw an HCl generator next to the back door).

## C. *Search Warrant.*

Redden argues that the trial court abused its discretion by admitting the evidence found pursuant to the search warrant because the search warrant was based upon hearsay. The state and federal constitutions guarantee that a court will not issue a search warrant without probable cause. U.S. CONST. amend IV; IND. CONST. art. 1, § 11. "Probable cause to search premises is established when a sufficient basis of fact exists to permit a reasonably prudent person to believe that a search of those premises will uncover evidence of a crime." *Esquerdo v. State,*

640 N.E.2d 1023, 1029 (Ind.1994). The decision to issue the warrant should be based on the facts stated in the affidavit and the rational and reasonable inferences drawn therefrom. *Id.* When seeking a search warrant, "the police must follow the warrant statute, I.C. § 35–33–5–2, which specifies the minimum information necessary to establish probable cause." *Id.* (internal citation omitted).

On review, we focus on whether a "substantial basis" existed for a warrant authorizing the search or seizure, and doubtful cases are resolved in favor of upholding the warrant. *Mitchell v. State,* 745 N.E.2d 775, 783 (Ind.2001). In determining whether a substantial basis exists, we, with significant deference to the judge's determination, must "focus on whether reasonable inferences drawn from the totality of the evidence support the determination." *Id.* Our review of a trial court's "substantial basis" determination is de novo. *Houser v. State,* 678 N.E.2d 95, 98 (Ind.1997).

According to Redden, the assertions in the affidavit "are all statements and observations made by [Detective] Brown" rather than assertions within Trooper Strange's personal knowledge. Appellant's Brief at 21. Redden contends that "the search warrant was based entirely on hearsay." *Id.* at 24. The Indiana Supreme Court has addressed the use of such assertions in search warrant affidavits and held:

An affidavit or sworn testimony such as this, which is based upon the statements of officers engaged in the investigation and shown to be based upon their actual knowledge, is not deficient, despite its hearsay character. *Spears v. State* (1978), 270 Ind. 12, 383 N.E.2d 282; *Ferry v. State* (1970), 255 Ind. 27, 262 N.E.2d 523. Such testimony can satisfy

the statutory standard for establishing probable cause to support a search warrant. *Wells v. State* (1979), Ind.App., 397 N.E.2d 1250; I.C. 35–33–5–2.

*Mitchell v. State,* 541 N.E.2d 265, 270 (Ind. 1989), *abrogated on other grounds by Games v. State,* 684 N.E.2d 466 (Ind.1997). We decline Redden's request to reexamine this principle. Trooper Strange's assertions regarding Detective Brown's observations could establish probable cause to support the search warrant.[10] *See, e.g., id.* (holding that "[t]he affidavit as a whole was sufficient in form and substance to serve as a basis for the issuance of a search warrant for appellant's truck, and the fruits of that search were properly admitted").

 Redden also seems to argue that the probable cause was lacking because the warrant was based upon uncorroborated hearsay information from the confidential informant. We agree that "uncorroborated hearsay from a source whose credibility is itself unknown, standing alone, cannot support a finding of probable cause to issue a search warrant." *Jaggers v. State,* 687 N.E.2d 180, 182 (Ind. 1997). However, the information from the confidential informant was only presented as a preliminary introductory matter to explain the investigation but did not provide information crucial to the probable cause determination.[11] *See, e.g., Mitchell,*

745 N.E.2d at 784 ("The information provided by the hotel employee was only presented as a preliminary introductory matter to explain the investigation but did not provide information crucial to the probable cause determination."). Probable cause for the issuance of the search warrant was provided by Redden's admissions regarding the marijuana, Detective Brown's detection of the chemical odor, and Detective Brown's observation of the muriatic acid and the pill soak. We conclude that a substantial basis existed for a warrant authorizing the search of Redden's house and property. *See, e.g., id.*

## II.

 The next issue is whether the evidence is sufficient to sustain Redden's conviction for dumping controlled substance waste as a class D felony. When reviewing claims of insufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. *Jordan v. State,* 656 N.E.2d 816, 817 (Ind.1995), *reh'g denied.* Rather, we look to the evidence and the reasonable inferences therefrom that support the verdict. *Id.* We will affirm the conviction if there exists evidence of probative value from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. *Id.*

The offense of dumping controlled substance waste is governed by Ind.Code § 35–48–4–4.1, which provides:

---

**10.** This case is readily distinguishable from *Turner v. State,* 843 N.E.2d 937 (Ind.Ct.App. 2006), in which we held that uncorroborated hearsay "reports" from unidentified third parties were insufficient to establish reasonable suspicion where the hearsay was not based on the actual knowledge of an investigating officer.

**11.** Redden also contends that Trooper Strange made a misrepresentation in the affidavit by stating that the confidential informant provided information that marijuana was in Redden's house because Detective Brown testified that the confidential infor-

mant provided information that methamphetamine was being manufactured in Redden's house. Mistakes and inaccuracies in search warrant affidavits will not "vitiate the reliability of the affidavits so long as such mistakes were innocently made." *Mitchell,* 745 N.E.2d at 785. The party alleging that the mistakes were not innocent must make a substantial showing that the facts were included in reckless disregard for the truth. *Id.* Redden has not made a substantial showing that the mistake was in reckless disregard for the truth.

(a) A person who dumps, discharges, discards, transports, or otherwise disposes of:

 (1) chemicals, knowing the chemicals were used in the illegal manufacture of a controlled substance or an immediate precursor; or

 (2) waste, knowing that the waste was produced from the illegal manufacture of a controlled substance or an immediate precursor;

commits dumping controlled substance waste, a Class D felony.

(b) It is not a defense in a prosecution under subsection (a) that the person did not manufacture the controlled substance or immediate precursor.

The State charged Redden under Ind.Code § 35–48–4–4.1(a)(2). Specifically, the State alleged that Redden "did dump, discharge, discard, transport, or otherwise dispose of waste, knowing that the waste was produced from the illegal manufacture of a controlled substance or an immediate precursor, to-wit: Police found Toluene; Denatured Alcohol; Xylol; Xylene and/or Coleman fuel containers on the property [Redden] occupies . . . ." Appellant's Appendix at 21.

■ According to Redden, the evidence is insufficient to sustain his conviction for dumping controlled substance waste under Ind.Code § 35–48–4–4.1(a)(2) because the empty cans do not constitute waste. Resolution of this issue requires us to interpret the dumping controlled substance waste statute. When interpreting a statute, we independently review the statute's meaning and apply it to the facts of the case under review. *State v. Evans*, 810 N.E.2d 335, 337 (Ind.2004) (citing *Bolin v. Wingert*, 764 N.E.2d 201, 204 (Ind. 2002)), *reh'g denied*. "If a statute is unambiguous, that is, susceptible to but one meaning, we must give the statute its clear and plain meaning." *Id.* If a statute is

susceptible to multiple interpretations, we must try to ascertain the legislature's intent and interpret the statute so as to effectuate that intent. *Id.* We presume the legislature intended logical application of the language used in the statute, so as to avoid unjust or absurd results. *Id.* "To be sure, penal statutes must be strictly construed against the State, but a statute should not be overly narrowed so as to exclude cases fairly covered by it and should be interpreted so as to give efficient operation to the expressed intent of the legislature." *Baird v. State*, 604 N.E.2d 1170, 1190 (Ind.1992), *cert. denied*, 510 U.S. 893, 114 S.Ct. 255, 126 L.Ed.2d 208 (1993).

The statute does not define the term "waste." When the legislature has not defined a word, we give the word its common and ordinary meaning. *Ind. Office of Environmental Adjudication v. Kunz*, 714 N.E.2d 1190, 1193 (Ind.Ct.App.1999). In order to determine the plain and ordinary meaning of words, courts may properly consult English language dictionaries. *Id.* The term "waste" is defined, in part, as: "4.a. Any useless or worthless by-product of a process or the like; refuse or excess material. 5. Garbage; trash." THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 1447 (1981).

According to Redden, the term "waste" does not include the empty cans because "the empty cans and the chemicals they may have contained could have initiated the manufacturing process, but they were not *produced by* the manufacturing process." Appellant's Brief at 26. The State counters that "[a]lthough empty precursor cans are not 'produced' during the methamphetamine manufacturing process, they certainly are superfluous material left over from that process (once their contents have been used), much the same way that

eggshells are 'waste' generated by baking a cake." Appellee's Brief at 16. We agree with the State's interpretation and conclude that Redden's proposed interpretation is too narrow and does not take into account the plain and ordinary meaning of the word "waste".

 The common definition of waste includes garbage or trash. Thus, a person who dumps garbage produced from the illegal manufacture of methamphetamine commits dumping controlled substance waste pursuant to Ind.Code § 35–48–4–4.1(a)(2). Contrary to Redden's argument, this interpretation does not conflict with Ind.Code § 35–48–4–4.1(a)(1). Subsection (a)(1) covers the dumping of chemicals used in the illegal manufacture of a controlled substance or an immediate precursor, while subsection (a)(2) covers the dumping of waste produced from the illegal manufacture of a controlled substance or an immediate precursor. We see nothing inconsistent about these subsections of Ind.Code § 35–48–4–4.1.

The State presented evidence that, outside of Redden's residence, the officers found a backhoe next to a hole that contained empty containers of denatured alcohol, camp fuel, xylene, and naphtha. Each of the cans were labeled as chemicals used in the manufacture of methamphetamine. Methamphetamine and everything needed to manufacture methamphetamine using the red phosphorous method was found inside Redden's house. We conclude that the State presented evidence of probative value from which a reasonable jury could have found Redden guilty beyond a rea-

sonable doubt of dumping controlled substance waste as a class D felony.

### III.

 The next issue is whether the trial court abused its discretion in sentencing Redden. Sentencing decisions rest within the discretion of the trial court and are reviewed on appeal only for an abuse of discretion. *Smallwood v. State*, 773 N.E.2d 259, 263 (Ind.2002). An abuse of discretion occurs if "the decision is clearly against the logic and effect of the facts and circumstances." *Pierce v. State*, 705 N.E.2d 173, 175 (Ind.1998).

The trial court here sentenced Redden to the presumptive sentences on his convictions and ordered that the sentences be served consecutively due to aggravating factors for an aggregate sentence of ten years.[12] Redden argues that the two aggravating factors, his criminal history and the fact that the offenses were committed in the presence of minors, are improper.

 "When sentencing a defendant on multiple counts, an Indiana trial judge may impose a consecutive sentence if he or she finds at least one aggravator." *Smylie v. State*, 823 N.E.2d 679, 686 (Ind.2005), *cert. denied,* —— U.S. ——, 126 S.Ct. 545, 163 L.Ed.2d 459 (2005). We need not consider whether the trial court abused its discretion by using Redden's misdemeanor criminal history, which consists of three convictions for driving while intoxicated, one conviction for driving while suspended, and one conviction for battery, as an aggravating factor because we conclude that the trial court did not abuse its discretion

---

**12.** Indiana's sentencing scheme was amended effective April 25, 2005, to incorporate advisory sentences rather than presumptive sentences. *See* Ind.Code §§ 35–38–1–7.1, 35–50–2–1.3. Redden committed his offenses prior to the effective date and was sentenced on August 15, 2005. Neither party argues that the amended sentencing statutes should be applied. Consequently, we will apply the version of the sentencing statutes in effect at the time Redden committed his offenses. Moreover, the application of the amended sentencing statute would not change the result here.

by using the fact that the offenses were committed in the presence of minors as an aggravating factor. *See Cotto v. State*, 829 N.E.2d 520, 526 (Ind.2005) (concluding that the defendant's five alcohol-related misdemeanor convictions were only marginally significant as aggravating factors in considering a sentence for a Class A felony).

■ The commission of a crime in the presence of minor children may be considered an aggravating circumstance. *Crawley v. State*, 677 N.E.2d 520, 522 (Ind. 1997). Redden wrote a letter in which he admitted that a seventeen-year-old girl and her one-year-old baby were living with him. The testimony of the officers and the photographs of Redden's residence make it clear that methamphetamine was being manufactured throughout the house. We agree with the State that "[t]he only reasonable inference is that a person living in Redden's house could not have avoided exposure to methamphetamine manufacture." Appellee's Brief at 21. The trial court did not abuse its discretion by finding the presence of minors as an aggravating factor or by imposing consecutive sentences. *See, e.g., Crawley*, 677 N.E.2d at 522 (holding that the trial court did not abuse its discretion by considering the presence of minors as an aggravating factor).

### IV.

■ The next issue is whether Redden's ten-year sentence is inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B) provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Redden requests that we revise his consecutive sentences to concurrent sentences for an aggregate sentence of four years.

Our review of the nature of the offense reveals that Redden was manufacturing methamphetamine in his residence. Officers found methamphetamine, marijuana, a gun hidden in the couch, and numerous precursors throughout his residence. Redden admitted that a seventeen-year-old girl and her one-year-old baby were living with him in this environment. Our review of the character of the offender reveals that forty-nine-year-old Redden has five misdemeanor convictions. The current convictions are his first felony convictions. Redden admitted that he is addicted to methamphetamine and has used marijuana for twenty-seven years. Although Redden points out that he was compliant with the officers and that the methamphetamine manufacturing was not a large-scale operation, his letters make it clear that he blames the police, the court system, and the confidential informant for his current problems. After due consideration of the trial court's decision, we cannot say that Redden's ten-year sentence for possession of marijuana as a class A misdemeanor, possession of two or more precursors while possessing a firearm as a class C felony, possession of methamphetamine while possessing a firearm as a class C felony, and dumping controlled substance waste as a class D felony is inappropriate. *See, e.g., Donnegan v. State*, 809 N.E.2d 966, 979 (Ind.Ct.App.2004) (holding that the defendant's forty-year sentence for dealing in cocaine was not inappropriate in light of the nature of the offense and the character of the offender), *trans. denied.*

For the foregoing reasons, we affirm Redden's convictions and sentence for possession of marijuana as a class A misdemeanor, possession of two or more precursors while possessing a firearm as a class C felony, possession of methamphetamine

while possessing a firearm as a class C felony, and dumping controlled substance waste as a class D felony.

Affirmed.

NAJAM, J. and ROBB, J. concur.