Kenneth BROWN, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 11A04–0904–CR–213.

Court of Appeals of Indiana.

Sept. 30, 2009.

Transfer Granted Nov. 24, 2009.

Kimberly A. Jackson, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Monika Prekopa Talbot, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

ROBB, Judge.

### Case Summary and Issues

Kenneth Brown appeals his convictions, following a jury trial, of possession with intent to deliver methamphetamine, a Class B felony; possession of a controlled substance, a Class C felony; possession of paraphernalia, a Class A misdemeanor; and possession of marijuana, a Class A misdemeanor. Brown raises one issue for our review, which we expand and restate as two: 1) whether the trial court properly concluded the police officers' knock and talk investigation at Brown's residence did not violate the Fourth Amendment to the United States Constitution or Article 1, section 11 of the Indiana Constitution; and 2) whether the trial court properly admitted into evidence drugs and paraphernalia found during the officers' search of Brown's residence. Concluding the officers' conduct was reasonable and the trial court properly admitted the evidence, we affirm.

### Facts and Procedural History

Around midnight on July 8, 2005, Mark Green was arrested on a federal firearms warrant by officers of the Linton, Indiana Police Department and found in possession of methamphetamine. Linton police had been investigating Green for methamphetamine possession based on an anonymous tip that Green obtained methamphetamine from Brown.

In the hours following Green's arrest, Linton Police Department officers Debbie McDonald, Joshua Goodman, and Paul Clark decided to investigate Brown's residence in Coalmont, Indiana. Officer McDonald met with Clay County Sheriff's Deputy Jerry Siddons; they discussed the Mark Green arrest and Deputy Siddons agreed to participate in a "stop and knock" at Brown's residence. Transcript at 5. The four officers, driving in three separate police cars, arrived at Brown's home around 2:35 a.m. on July 8. The officers lacked probable cause for a search warrant or for Brown's arrest.

All four officers walked to Brown's front door; the lights were on, and the officers could hear the television. Officer Clark knocked on the door three times and "announced [the officers'] presence." Appellant's Appendix at 24. Brown, who testified the knocking woke him from sleep and sounded like someone trying to kick in the door, answered. Brown was the only person home at the time. Officer Clark ex-

plained to Brown that Mark Green had been arrested that night and the officers suspected Green had been at Brown's home to purchase methamphetamine. Officer Clark told Brown the officers "wanted to search [Brown's] residence for contraband or methamphetamine." Tr. at 38.

Officer Clark asked Brown for permission to search the home, and Brown "said yes but only one [officer] can come in." *Id.* Officer Clark asked Brown to keep the front door open for officer safety, and Brown agreed and "stood in the doorway to prevent the rest of us from coming in but allowed Officer Clark to go in and search." *Id.* at 25. At no time did Brown, who is hearing impaired and normally wears a hearing aid, indicate he did not understand what Officer Clark was saying. The officers did not obtain Brown's written consent to search and they did not advise Brown of his right to refuse their entry or search. The officers testified that if Brown had not consented for Officer Clark to enter and search they would have left Brown's residence.

Upon entering, Officer Clark conducted a sweep of the home and began searching the living room. His search uncovered plastic baggies with methamphetamine residue; glass pipes with methamphetamine residue; an unmarked prescription bottle containing twenty-four Darvocet pills; a set of scales; marijuana; a bong and homemade pipes for smoking marijuana; and other drug paraphernalia. After field testing on these items was positive for drugs, the officers arrested Brown and performed a pat-down search of him, finding in his pocket a plastic bag with drug residue and $1,300 cash folded in $100 increments. The other officers searched the other rooms, finding more plastic baggies with methamphetamine residue, more marijuana, and more paraphernalia.

On July 8, 2005, the State charged Brown with possession with intent to deliver methamphetamine, a Class B felony; possession of a controlled substance, a Class C felony; possession of paraphernalia, a Class A misdemeanor; and possession of marijuana, a Class A misdemeanor. Brown filed a pretrial motion to suppress the drugs and paraphernalia, arguing the officers' knock and talk investigation and subsequent search of his residence violated the Fourth Amendment to the United States Constitution and Article 1, section 11 of the Indiana Constitution. Following a hearing, the trial court denied the motion.

At trial, Brown did not make any contemporaneous objections to admission of the drugs and paraphernalia. However, after all exhibits were admitted, defense counsel referred to Brown's motion to suppress and stated, "it's my understanding the court was going to overrule objections that we would make concerning the admissibility of evidence ... Just to make sure that the record is clear and to preserve the record for Mr. Brown's benefit, we would restate those objections that we previously wrote in our motion to suppress...." Tr. at 160. The trial court stated, "I make no representation myself about how you've done this. But it will be noted in the record." *Id.* at 161.

On December 17, 2008, the jury found Brown guilty as charged, and the trial court entered a judgment of conviction on all counts. On January 14, 2009, the trial court sentenced Brown to a total of ten years at the Department of Correction with four years suspended. Brown now appeals.

*Discussion and Decision*

### I. Standard of Review

■ Generally, we review a trial court's ruling on the admissibility of evidence for

abuse of discretion, *Smith v. State,* 889 N.E.2d 836, 839 (Ind.Ct.App.2008), but the State argues Brown waived his challenge to the admissibility of evidence by failing to timely object when the drugs and paraphernalia were admitted at trial. "When the trial court denies a motion to suppress evidence . . ., the [defendant] must renew his objection to admission of the evidence at trial. If the [defendant] does not object to the evidence at trial, then any error is waived." *Wright v. State,* 593 N.E.2d 1192, 1194 (Ind.1992) (citation omitted), *cert. denied,* 506 U.S. 1001, 113 S.Ct. 605, 121 L.Ed.2d 540 (1992), *abrogated in part on other grounds, Fajardo v. State,* 859 N.E.2d 1201, 1206 (Ind.2007). Brown acknowledges he did not timely object to the admission of the drugs and paraphernalia at trial but argues he preserved the issue for appeal by referring the trial court to his motion to suppress. In *Hayworth v. State,* 904 N.E.2d 684 (Ind.Ct.App.2009), we concluded a defendant waived his challenges to the admissibility of evidence when the defendant's counsel, having attempted to lodge a continuing objection to evidence ruled admissible at a suppression hearing, stated "no objection" when the same evidence was admitted at trial. *Id.* at 686. Though disapproving that procedure, we addressed Hayworth's appeal on the merits because Hayworth invoked the fundamental error doctrine. *Id.*

■ As in *Hayworth,* Brown has waived his challenge to the admissibility of evidence, but we address the merits notwithstanding waiver because Brown invokes the fundamental error doctrine, arguing that admission of the drugs and paraphernalia was fundamental error. To rise to the level of fundamental error, an error "must constitute a blatant violation of basic principles, the harm or potential for harm must be substantial, and the resulting error must deny the defendant fundamental due process." *Maul v. State,* 731 N.E.2d 438, 440 (Ind.2000) (internal quotation and citation omitted). "The standard for fundamental error is whether the error was so prejudicial to the rights of the defendant that a fair trial was impossible." *Boatright v. State,* 759 N.E.2d 1038, 1042 (Ind.2001).

## II. Knock and Talk Investigation

■ Brown first argues the trial court erred in admitting the drugs and paraphernalia because they were the fruit of an unlawful knock and talk investigation.[1] "A knock and talk investigation involves officers knocking on the door of a house, identifying themselves as officers, asking to talk to the occupant about a criminal complaint, and eventually requesting permission to search the house." *Hayes v. State,* 794 N.E.2d 492, 496 (Ind.Ct.App. 2003) (internal quotation and citation omitted), *trans. denied.* Brown contends the officers' knock and talk investigation in this case violated his rights under both the Fourth Amendment to the United States Constitution and Article 1, section 11 of the Indiana Constitution.

### A. Fourth Amendment

■ The knock and talk procedure "does not per se violate the Fourth Amendment." *Id.* at 498. Neither probable cause nor reasonable suspicion is constitutionally prerequisite for a knock and talk investigation, and suspicion based on

---

1. The police officers' testimony and Brown's appellant's brief refer to the officers' investigation in this case as a "stop and knock." Tr. at 5; Brief of the Appellant at 13. The trial court correctly recognized this type of investigation is known under Indiana precedent as a "knock and talk." Appellant's App. at 85 (citing *Hayes v. State,* 794 N.E.2d 492 (Ind.Ct. App.2003), *trans. denied* ).

an anonymous tip is a proper basis for officers to enter the curtilage of private property and make inquiries of the occupants. *Hardister v. State*, 849 N.E.2d 563, 570 (Ind.2006). We therefore reject Brown's argument that the officers' entry onto his property was unlawful because the officers knocked on his front door lacking a search warrant or probable cause to arrest or search or because their decision to investigate was based on an uncorroborated anonymous tip. *See id.* at 568–69 ("no Fourth Amendment interest implicated" when officers, investigating anonymous tip of drug activity, knocked on house door).

■ The knock and talk procedure does, however, implicate the Fourth Amendment if under the totality of circumstances a reasonable person would not feel free to refuse the officers entry, ignore the officers' inquiries, and go about his business. *Redden v. State*, 850 N.E.2d 451, 458–59 (Ind.Ct.App.2006), *trans. denied.* Brown therefore argues that under the particular circumstances of this case, the officers' actions amounted to an unreasonable seizure because four officers in three police cars approached Brown's home in the middle of the night, the officers "continued to bang on the door until Brown answered," Brief of the Appellant at 16, they did not offer Brown a consent to search form, and they did not advise Brown that he was free to refuse them entry. The issue, then, is whether under the totality of the circumstances, a reasonable person in Brown's position would have felt free to ignore the officers' presence or deny them entry. We have observed that a reasonable person may not feel free to ignore officers' entreaties if, for example, there is a threatening presence of several officers, one or more officers displays a weapon, an officer physically touches the person, or the tone of the officer's voice indicates that compli-

ance with the officer's request might be compelled. *Overstreet v. State*, 724 N.E.2d 661, 664 (Ind.Ct.App.2000), *trans. denied.*

■ Here, although the approach by several officers in the middle of the night could appear threatening to a reasonable person, the trial court found there "is no evidence that at any time did the officers present attempt to intimidate, bully, coerce or show force to Mr. Brown." Appellant's App. at 85. None of the officers drew their weapons or physically touched Brown. Nothing in what the officers said or their tone of voice indicated Brown was not free to close the door and refuse them entry. Moreover, Brown was at his home, where a reasonable person is less likely to feel constrained to grant police officers' requests than in a public place. Although the officers did not expressly advise Brown he had the right to refuse them entry, Brown displayed his awareness of that right when he clearly said only one of the officers could come in. Under the totality of circumstances, a reasonable person in Brown's position would have felt free to ignore the officers' presence or deny them entry. Therefore, the officers' knock and talk investigation was not a seizure of Brown within the meaning of the Fourth Amendment.

### B. Article 1, Section 11

■ Although Article 1, section 11 of the Indiana Constitution is worded identically to the Fourth Amendment, we analyze its protections differently, examining "the specific facts of each case and whether police conduct is reasonable in light of the totality of the circumstances." *Rush v. State*, 881 N.E.2d 46, 52 (Ind.Ct.App.2008). Although there may be other relevant considerations, the reasonableness of a search or seizure under section 11 is generally determined by balancing "1) the degree of concern, suspicion, or knowledge that a

violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs." *Litchfield v. State*, 824 N.E.2d 356, 361 (Ind.2005). The purpose of Article 1, section 11 is to protect Indiana citizens from unreasonable police activity in private areas of their lives, but "Indiana citizens have been concerned not only with personal privacy but also with safety, security, and protection from crime." *State v. Gerschoffer*, 763 N.E.2d 960, 965–66 (Ind.2002). Although it is established a knock and talk investigation does not necessarily violate Article 1, section 11, *see Redden*, 850 N.E.2d at 461, we examine whether the specific officer conduct in this case was reasonable under the totality of circumstances.

 Here, the officers' act of knocking on Brown's door in the middle of the night was a significant intrusion on Brown's ordinary activities and the officers' suspicion of Brown's drug involvement was, at the time of the knock and talk, minimally supported. However, the State points out that following the arrest of Mark Green, "the police had to act quickly because [Brown] could have disposed of the evidence." Brief of Appellee at 11. Moreover, there is a strong law enforcement need for knock and talk investigations in response to reports of drug activity, because absent such an initial investigation at a private residence, officers may be unable to discover sufficient facts to obtain search warrants. *See, e.g., Redden*, 850 N.E.2d at 456–57 (knock and talk investigation, which this court upheld, revealed strong chemical odor and other evidence of methamphetamine production officers then used to obtain search warrant); *VanWinkle v. State*, 764 N.E.2d 258, 261–62 (Ind. Ct.App.2002), *trans. denied* (same).

The dissent correctly observes the knock and talk procedure can be misused and, in that sense, "pushes the envelope" of reasonable police investigation. *Hayes*, 794 N.E.2d at 497. This court has held that a knock and talk becomes unreasonable and in violation of Article 1, section 11 when, for example, officers do not disclose their identity as officers, *State v. Keller*, 845 N.E.2d 154, 168–69 (Ind.Ct.App.2006), or officers remain on the curtilage of property after the occupants fail to answer the door, *Shultz v. State*, 742 N.E.2d 961, 966 (Ind.Ct.App.2001), *trans. denied*. Such is not the case here; the officers identified themselves, clearly explained their purpose in knocking on Brown's door, and did nothing to indicate they would have done anything but leave if Brown had refused to answer. Moreover, although the dissent concludes the officers' conduct was unreasonable because of the number of officers present, among other circumstances, we have upheld knock and talk investigations involving a considerable number of officers. *See Traylor v. State*, 817 N.E.2d 611, 614 (Ind.Ct.App.2004) (five officers), *trans. denied*; *VanWinkle*, 764 N.E.2d at 261 (same).

Under the totality of circumstances, therefore, the officers' knock and talk investigation at Brown's residence was reasonable and did not violate Brown's rights under Article 1, section 11 of the Indiana Constitution.

### III. Admissibility of Evidence

Brown next argues the trial court erred in admitting the drugs and paraphernalia because his consent to search was invalid under the Fourth Amendment to the United States Constitution and Article 1, section 11 of the Indiana Constitution. We address Brown's federal and state constitutional arguments in turn.

## A. Fourth Amendment

Under the Fourth Amendment, police generally must obtain a search warrant from a neutral magistrate prior to searching a person or private property, subject to " 'certain carefully drawn and well-delineated exceptions.' " *Sellmer v. State,* 842 N.E.2d 358, 362 (Ind. 2006) (quoting *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)). Because warrantless searches are per se unreasonable, the State bears the burden of proving that a search falls within one of the well-delineated exceptions to the warrant requirement. *Johnson v. State,* 766 N.E.2d 426, 432 (Ind.Ct.App. 2002), *trans. denied.*

One of these well-recognized exceptions is a voluntary and knowing consent to search. *Krise v. State,* 746 N.E.2d 957, 961 (Ind.2001). The State must prove " 'that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied.' " *Campos v. State,* 885 N.E.2d 590, 600 (Ind.2008) (quoting *Schneckloth v. Bustamonte,* 412 U.S. 218, 248, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)). The voluntariness of a defendant's consent is determined from the totality of circumstances, which include:

(1) whether the defendant was advised of his Miranda rights prior to the request to search; (2) the defendant's degree of education and intelligence; (3) whether the defendant was advised of his right not to consent; (4) whether the [defendant] has previous encounters with law enforcement; (5) whether the officer made any express or implied claims of authority to search without consent; (6) whether the officer was engaged in any illegal action prior to the request; (7) whether the defendant was cooperative previously; and (8) whether the officer was deceptive as to his true identity or the purpose of the search.

*Callahan v. State,* 719 N.E.2d 430, 435 (Ind.Ct.App.1999).

Brown challenges the trial court's determination that he gave voluntary and knowing consent for Officer Clark to search his residence. Specifically Brown points to the fact that four officers in three police cars came to Brown's home at 2:30 a.m. and to evidence that Brown was then sleeping and "[w]hen police did not receive an initial response to their knocking, they continued to bang on the door" so loudly it "appeared to Brown that someone was trying to kick in his door." Br. of Appellant at 19. Brown adds his hearing disability "left him unable to understand what the officers were saying unless they were facing him when they spoke," *id.* at 20, and the officers did not tell Brown he had the right to refuse consent to search. Brown argues that under these circumstances any reasonable person would have felt obligated to consent to the search and, therefore, his consent was not voluntary.

The facts most favorable to the trial court's ruling are as follows: Brown was not arrested or in any way restrained until after the drugs were discovered; the officers made no express or implied claim of authority to search without Brown's consent; the officers clearly indicated their identity and the purpose of the requested search; the officers were not engaged in any illegal activity prior to asking Brown's consent to search; Brown heard and understood Officer Clark's request to search; Brown gave permission for only one officer to enter and search, and the other officers obeyed this qualification by remaining on the porch; and Brown in all other respects was cooperative with the officers' investigation. We also note the officers' testimony that if Brown had refused consent to search, the officers would have left Brown's residence. These circumstances, taken together, are sufficient under the

totality of circumstances test to indicate Brown's consent to search his residence was voluntarily given. *See Callahan*, 719 N.E.2d at 435–36 (defendant's consent to search car during traffic stop was voluntary under similar set of circumstances).

### B. Article 1, Section 11

Under Article 1, section 11 of the Indiana Constitution, a defendant in custody must be advised of his right to counsel before giving constitutionally valid consent to search. *Campos*, 885 N.E.2d at 601 (citing *Pirtle v. State*, 263 Ind. 16, 323 N.E.2d 634, 640 (1975)). Brown argues his consent to search his residence was invalid under this constitutional provision because he was in custody when the officers asked permission to search and the officers, as the State concedes, did not advise him of his right to counsel or other constitutional rights at that time. The issue, then, is whether Brown was indeed in custody when the officers asked permission to search.

Custody, for this purpose, is determined objectively based on "whether reasonable persons under the same circumstances would believe they were in custody or free to leave." *Campos*, 885 N.E.2d at 601. To be in custody the defendant need not be under formal arrest. *Peel v. State*, 868 N.E.2d 569, 577 (Ind.Ct. App.2007). Rather, we consider the totality of circumstances, including the number of officers present, *Jones v. State*, 655 N.E.2d 49, 56 (Ind.1995); whether any officer physically touches the defendant, *id.*; whether the defendant is asked incriminating questions, *Peel*, 868 N.E.2d at 577–78; whether the officers ask permission to search multiple times before finally receiving consent or are less than straightforward about the defendant's right to refuse, *Sellmer*, 842 N.E.2d at 364; and the officers' perceptions as to the defendant's freedom to leave, *Joyner v. State*, 736 N.E.2d 232, 241 (Ind.2000).

Brown argues he was in custody because the number of officers was substantial considering Brown lived in a very small town, the officers arrived at 2:30 a.m. when Brown was sleeping, they repeatedly banged on Brown's door, and they informed Brown of their suspicion he had been selling drugs to Mark Green, giving an impression they were there to arrest him. Acknowledging that some of these circumstances, particularly the number of officers and the time of night, would support concluding Brown was in custody, we cannot say he was in custody under the totality of circumstances. Most importantly, the officers did not physically touch Brown or handcuff him, they did not ask him incriminating questions, and they did and said nothing to indicate his refusal to consent to a search would not be honored. *See Jones*, 655 N.E.2d at 56 (custody did not attach during traffic stop by two officers where defendant was not physically restrained or asked incriminating questions). Brown relies on *Peel v. State*, but that case differs significantly because the defendant's consent to search was obtained only after an officer asked several incriminating questions about marijuana the defendant had admitted possessing. 868 N.E.2d at 577. We conclude Brown was not in custody when the officers asked permission to search his residence, and therefore his consent to search was valid under Article 1, section 11 of the Indiana Constitution.

### Conclusion

The knock and talk investigation did not violate Brown's rights under the Fourth Amendment to the United States Constitution or Article 1, section 11 of the Indiana Constitution. The search of Brown's residence did not violate either Constitution

because Brown was not in custody and he voluntarily consented to the search. Therefore, the trial court properly admitted the drugs and paraphernalia. Brown's convictions are affirmed.

Affirmed.

DARDEN, J., concurs.

MATHIAS, J., dissents with opinion.

MATHIAS, J., dissenting.

I respectfully dissent from the majority's conclusion that the knock and talk investigation and resulting search of Brown's residence were reasonable and not in violation of Article 1, Section 11 of the Indiana Constitution.[2]

As our court has observed, the knock and talk procedure "pushes the envelope and can easily be misused." *Hayes v. State,* 794 N.E.2d 492, 497 (Ind.Ct.App. 2003), *trans. denied.* "Knock and talk might more aptly be named knock and enter, because it is usually the officer's goal not merely to talk but to conduct a warrantless search of the premises." *Id.* "[W]hile the knock and talk procedure is not necessarily unlawful, it is a dangerous short-cut around the bedrock requirement that police have probable cause to enter a home." *Kendall v. State,* 825 N.E.2d 439, 460 (Ind.Ct.App.2005) (Najam, J., dissenting), *aff'd on other grounds in part and summarily aff'd in part by* 849 N.E.2d 1109 (Ind.2006).

The legality of a governmental search under the Indiana Constitution turns on an evaluation of the reasonableness of the police conduct under the totality of the circumstances. *Litchfield v. State,* 824 N.E.2d 356, 359 (Ind.2005). Although there may be other relevant considerations under the circumstances, the reasonableness of a search or seizure balances: 1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs. *Id.* at 361.

In this case, there is scant evidence in the record as to the degree of concern, suspicion or knowledge on the part of the investigating officers that Brown possessed methamphetamine at his residence. When Green was arrested, he did not indicate that he had obtained methamphetamine from Brown. Officer Debbie McDonald testified that a "concerned citizen" provided information about Green "who was the person we were investigating," and the citizen also believed that Green obtained the methamphetamine from Brown. Tr. pp. 4–5. Linton Police Officer Paul Clark admitted, "we didn't have anything to go on. We were, to put it in layman's terms, taking a crap shot to get into his house because we thought we had an opportunity to do so." Tr. p. 41.

It is at this juncture that I part company with the majority. I simply do not see how a "crap shot" amounts to a reasonable degree of concern, suspicion or knowledge that criminal activity has occurred under the requirements of *Litchfield.* All that the officers had as reason for their early morning visit to Brown's home was one, uncorroborated statement from a "concerned citizen." This is a far different situation from *Traylor v. State,* 817 N.E.2d 611, 614 (Ind.Ct.App.2004), *trans. denied,* where the law enforcement visit was based on an anonymous tip reporting the odors of ether and anhydrous ammonia, which are part of the methamphetamine manufacturing process, emanating from a near-

---

2. However, I agree that the knock and talk investigation and search of Brown's residence did not violate Brown's rights under the Fourth Amendment.

by mobile home. It is also a far different situation from *VanWinkle v. State*, 764 N.E.2d 258, 260–61 (Ind.Ct.App.2002), *trans. denied*, where the law enforcement visit was the result of three different calls over ten days by two credible callers reporting the odor of ether emanating from a nearby mobile home.

Nevertheless, in the case before us, four officers arrived at Brown's residence in three squad cars at 2:35 a.m. Brown, who is hearing impaired, stated he was asleep when the officers arrived. He testified that he thought "somebody was trying to kick [the door] in because they was hittin' it so hard." Tr. p. 201. The officers did not advise Brown at any time that he had the right to refuse entry into his home.

The degree of intrusion in this case was very high. Four officers, in three squad cars, arrived at Brown's home at 2:35 a.m. The officers knocked on the door so hard that Brown, who was asleep and is hearing impaired, thought someone was trying to kick in his door. I do not believe that a reasonable person, roused from sleep and faced with these intimidating circumstances, would feel free to refuse the officers' request to search. *See Hayes*, 794 N.E.2d at 497 ("[R]esidents of a home are not likely to deny a police officer's request to enter, either because they are ignorant of the law or are simply 'too stunned by the circumstances to make a reasoned decision about whether or not to consent to a warrantless search[.]' ") (citation omitted). In contrast, the Traylor law enforcement visit took place at an unspecified time "in the early morning," and the VanWinkle visit occurred at about 1:00 p.m. Neither visit awakened the occupants of the respective mobile homes.

The majority acknowledges that "the officers' act of knocking on Brown's door in the middle of the night was a significant intrusion on Brown's ordinary activities and the officers' suspicion of Brown's drug involvement was, at the time of the knock and talk, minimally supported." Slip op. at 9. Yet, the majority concludes that "law enforcement needs" weigh in favor of concluding that the search was reasonable under Article 1, section 11.

The State argues that "the police had to act quickly because [Brown] could have disposed of the evidence." Appellee's Br. at 11. However, the police did not have any reasonable grounds to believe that Brown had methamphetamine or other narcotics in his home. They merely had a suspicion that Brown might have been supplying methamphetamine to Green. While I acknowledge the police officers' justifiable need to investigate suspicion of narcotics activity, the officers may not conduct their investigation in a manner that infringes on the suspect's rights under Article 1, Section 11 of the Indiana Constitution. In contrast again, in both the *Traylor* and *VanWinkle* cases, before the law enforcement officers involved initiated a "knock and talk," they had independently confirmed the drug manufacturing odors that they had received complaints about.

When we expect a drowsy citizen to stand up to four armed officers who knock at the front door in the middle of the night without a search warrant, I believe we begin to establish a culture of general distrust of law enforcement and its motives that is corrosive to civil society. Accordingly, I strike the *Litchfield* balance in favor of Brown and, more importantly, in favor of innocent citizens who are likewise awakened in their homes by the demanding knock and voice of law enforcement at their doors in the middle of the night. If "law enforcement needs" prevail under circumstances like these, the greater right to privacy Hoosiers enjoy under Article 1, Section 11 of the Indiana Constitution, *see*

*Brown v. State,* 653 N.E.2d 77 (Ind.1995), is ephemeral, if it exists at all.

For all of these reasons, I conclude that the officers' knock and talk investigation at Brown's residence was unreasonable under Article 1, Section 11 of the Indiana Constitution, and that therefore, Brown's subsequent consent to search was involuntary.